THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
RICHARD D. PRICE, JR., Defendant-Appellant.

Third District   Nos. 3—89—0341 through 3—89—0344 cons.

Opinion filed March 30, 1990.

Robert Agostinelli, of State Appellate Defender's Office, of Ottawa, for appellant.

James Majors, of State's Attorneys Appellate Prosecutor's Office, of Springfield, for the People.

JUSTICE LUND delivered the opinion of the court:

On February 24, 1989, the circuit court of Peoria County, following the earlier pleas of guilty but mentally ill to four distinct offenses of forgery (Ill. Rev. Stat. 1987, ch. 38, par. 17—3) by defendant Richard Price, Jr., sentenced defendant to two concurrent three-year prison terms, to be followed by two more concurrent three-year prison terms. Defendant now appeals, alleging: (1) his convictions should be reversed due to an attorney conflict of interest; (2) he was improperly admonished prior to his guilty plea; and (3) he was improperly sentenced to consecutive sentences.

Defendant was an attorney at the time the criminal offenses took place, and all the offenses involved abuse of his professional capacity. He was originally charged in four separate criminal cases. Pursuant to negotiations, on January 3, 1989, defendant pleaded guilty but mentally ill (Ill. Rev. Stat. 1987, ch. 38, par. 6—2(c)) to one forgery count in each case, and all other charges were dismissed.

The factual basis presented for the pleas established that, in each case, defendant represented the victims in either personal injury or worker's compensation cases. In each case, defendant settled the claims, forged the victims' signatures to release forms and settlement checks, and kept the money. Three offenses took place in the spring and summer of 1987, and one offense took place in 1985. The amounts involved were $25,000, $12,000, $2,500, and $21,311.50. Also, the psychiatric evidence showed that several experts diagnosed defendant as suffering from a major affective disorder, bipolar type, also known as manic depression, and a narcissistic personality disorder.

A sentencing hearing was conducted on February 24, 1989. After hearing the State's and defendant's evidence and reviewing copious medical reports, the court found that consecutive sentences were necessary to protect the public from further criminal conduct by defendant. Accordingly, the court sentenced defendant to two concurrent three-year prison terms, to be followed by two more concurrent three-year prison terms. Defendant filed a motion to withdraw his guilty plea which, following a hearing, was denied. This appeal followed.

Defendant first asserts that his guilty pleas should be vacated, due to an attorney conflict of interest. At all times, defendant was represented by Peoria County public defender Thomas Penn. However, on November 12, 1987, due to Penn's unavailability, assistant public defender Kenneth Lyons appeared. At that time, only two cases had been filed. The hearing involved a motion for handwriting exemplars, to which defendant did not object, and an arraignment on a new misdemeanor charge. This was Lyons' only contact with the case. He was, subsequently, elected Peoria County State's Attorney, and took office in December 1988. Defendant maintains the fact that Lyons earlier represented him, and then was State's Attorney at the time he pleaded guilty, is a conflict of interest.

At the hearing to withdraw his guilty plea, defendant testified he spoke with Lyons in detail about his cases and possible pending cases. However, later, he stated he spoke with Lyons 10 minutes before the hearing and about one minute after. He also stated he believed Lyons would not take office until January 20, 1989, when the President was inaugurated.

Lyons testified he had a number of other cases during the court call in question. He did not talk to defendant earlier because defendant had arrived late. Lyons said they never discussed any of the case. He explained he was only covering for Penn and was told everything had been agreed to. He also never talked about the merits of the case with Penn. Once he became State's Attorney, he had no involvement with

the case, relying on the assistants who had prosecuted the case throughout.

Penn testified Lyons was called to cover for him because he was out of town, and the hearing involved an unobjected-to motion for written exemplars. He never spoke to Lyons about any of the particulars of the case. He never spoke with Lyons about the case after the election. He remembered defendant mentioning the election to him and asking if he thought Lyons' election would be helpful, since Lyon had been Penn's assistant.

The evidence also showed the Peoria County public defender's office is a decentralized office. The assistants are all involved in their own private practices and only get cases as they are assigned to them. While they will sometimes cover routine court hearings for each other, they almost never work together on cases or share information about them.

Defendant, in making his argument, relies on *People v. Gerold* (1914), 265 Ill. 448, 107 N.E. 165, and *People v. Curry* (1971), 1 Ill. App. 3d 87, 272 N.E.2d 669. He notes these cases hold that once a defendant has been represented by counsel, counsel cannot later prosecute the defendant on these same acts. However, these cases are distinguishable from the present one by their facts.

In *Gerold*, the prosecuting attorney had represented the defendant for several years prior to the indictment and had discussed the various items which eventually became part of the criminal charge. In *Curry*, the prosecuting attorney seeking to revoke defendant's probation had been defense counsel when defendant was placed on probation.

■ The underpinning of these holdings is counsel's ethical obligation and professional responsibility to guard the confidences and secrets of his client. (*Gerold*, 265 Ill. at 478, 107 N.E. at 177; *Curry*, 1 Ill. App. 3d at 90, 272 N.E.2d at 672.) Thus, it is the possible divulgence or use of information given counsel in confidence that is the evil to be guarded against. As the *Gerold* court stated:

> "An attorney cannot be permitted to assist in the prosecution of a criminal case *if* by reason of his professional relations with the accused he has *acquired* a knowledge of the facts upon which the prosecution is predicated or which are closely interwoven therewith." (Emphasis added.) *Gerold*, 265 Ill. at 478, 107 N.E. at 177.

■ As can be readily seen, the present case is markedly different, factually. Lyons only appeared at one routine hearing, when an unobjected-to order was entered and defendant was arraigned on a new charge. Lyons and Penn never discussed any of the details of the case.

While defendant testified he did discuss the details of the case with Lyons, we observe that Lyons denied this and, according to defendant, this conversation lasted, at most, 10 minutes prior to court. Thus, defendant's assertion is questionable. Once Lyons became State's Attorney, he was not involved in the case and, in fact, testified he knew little about the particulars. The plea was consummated within 30 days of Lyons being placed in office and was handled by the same prosecutors throughout. We do not believe, due to these differences, that *Gerold* and *Curry* are applicable and, therefore, conclude that no conflict of interest exists.

Further, we observe the record establishes defendant knew of Lyons' assuming the State's Attorney's position and that defendant was hopeful this would be beneficial to him. We do not believe a defendant, cognizant of a possible conflict, should be allowed to await the outcome of a proceeding to determine, in his own mind, if the conflict was helpful and, then, if displeased, be allowed to overturn the proceedings based on this conflict. Accordingly, if a conflict had existed, which we have determined did not, then defendant by this conduct would have waived any assertion of error due to it.

Defendant next insists he was improperly admonished at the January 3 guilty plea hearing. The exchange questioned involved a warning of the possible penalties. The court stated:

"If you plead guilty and I accept your plea, I will then sentence you. Each offense to which you're charged is a Class 3 felony, and let me go over what's available for Class 3, and then we'll talk about guilty but mentally ill in a minute.

For a Class 3 felony, probation not more than 30 months, conditional discharge not more than 30 months, restitution or a fine of $10,000 or less, periodic imprisonment less than 18 months, imprisonment not less than *three years* nor more than five, followed by mandatory supervised release of one." (Emphasis added.)

Defendant notes the proper prison range for a Class 3 felony is two to five years. (See Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—1(a)(6).) He maintains this error requires reversal. We disagree.

■■ When a defendant pleads guilty, he is to be admonished pursuant to Supreme Court Rule 402(a) (107 Ill. 2d R. 402(a)). These admonitions must be given to the defendant, to ensure his guilty plea is intelligently and understandingly made, as required by *Boykin v. Alabama* (1969), 395 U.S. 238, 242-44, 23 L. Ed. 2d 274, 279-80, 89 S. Ct. 1709, 1711-12. (*People v. O'Toole* (1988), 174 Ill. App. 3d 800, 803, 529 N.E.2d 54, 56.) One of the requirements is that the defendant be ad-

vised of the possible minimum and maximum sentence, and the failure to properly do so is reversible error. See *People v. Kidd* (1989), 129 Ill. 2d 432, 544 N.E.2d 704.

■ However, the customary fact situation is where the court either fails to state the possible minimum or recites a possible minimum lower than that authorized. In the present case, the court stated a minimum higher than that authorized. The purpose of the admonitions is to make sure a defendant makes a voluntary and intelligent decision by understanding all the possible consequences of that decision. (*People v. Ballheimer* (1967), 37 Ill. 2d 24, 26, 224 N.E.2d 811, 812.) Thus, when a defendant has been advised the minimum sentence is less than it actually is, he cannot be deemed to have made an intelligent decision because the range of possible penalty is greater than he believed. However, the same problem does not exist when a defendant is advised the minimum sentence is actually greater than it is. Rather than be prejudiced, the defendant in such a case would be pleasantly surprised to find the sentence is less than he believed when he pleaded guilty. While we can envision a defendant stating he would not have pleaded guilty if he had known the possible sentence was greater than he was advised, we have difficulty picturing a defendant making a similar assertion where the penalty is less serious than he was advised. Accordingly, we hold that an admonition by the court, which includes a minimum sentence greater than it actually is, does not *per se* invalidate an otherwise valid guilty plea.

■ We have addressed this issue without any reliance on defendant's professional experience. However, we would be remiss if we did not observe that defendant was, by all accounts, an intelligent and successful attorney for a number of years prior to these difficulties. While his primary focus was civil law, he did represent criminal defendants. At the hearing on his motion to withdraw his plea, he testified that while he was hoping for probation, he was aware that a prison sentence was possible. However, he believed that two years was the most he would receive. Thus, apart from the earlier discussion, it is evident defendant was aware of the correct possible minimum.

Defendant's final assertion is that he was improperly sentenced to consecutive sentences. At the sentencing hearing, the State sought two consecutive five-year prison sentences, and the defendant argued for probation. The court, finding it is necessary to protect the public from further criminal conduct by defendant, imposed consecutive three-year sentences. Defendant asserts this finding by the court is erroneous and that the court failed to properly weigh several mitigating factors.

At the sentencing hearing, the State presented testimony of various victims, including one who was a named victim in one information and stated he had never received any of the $21,000 settlement. The other victims were not involved in the charged offenses. One stated he received his settlement check, but the settlement check included a deduction of $2,000 for medical fees, which defendant was to pay and never did. Another was a mother with a young daughter involved in an automobile accident. Defendant settled this case for $5,000 and, forging all the signatures involved, kept the money. The last witness was an estate representative, who testified estate funds of $37,000 were found to have been placed in defendant's account. Eventually, due to the representative's persistence, he paid it back over a period of time. The evidence also showed defendant had a serious financial shortfall, just prior to this money being deposited to his account. Finally, a tape recording of a court-ordered electronic surveillance of a conversation between a victim and defendant was played. In the tape, defendant admitted he had cashed the check, promised to pay it back, and attempted to dissuade the victim from testifying against him.

Defendant presented the testimony of family members and two experts, a clinical neuropsychologist, and a neurologist. The experts agreed with the diagnosis of defendant's mental illness. They also believe that he is suffering from a permanent frontal lobe injury, due to the cumulative effect of several blows to the head. They explained that people with frontal lobe injuries frequently show bad judgment and are capable of committing a variety of foolish and impulsive acts, without looking to the long-range consequences, much as a young child would. Thus, one with this injury who found himself in a difficult situation would do whatever is necessary to extricate himself immediately from that situation, without any regard to the consequences. Mixing this difficulty with defendant's bipolar disorder is likely to create a very difficult situation. They observed that defendant has been declared totally disabled by the Social Security Administration due to these difficulties.

The court also had the opportunity to review the presentence report, which showed no prior criminal activities by defendant. The report also contained voluminous medical and psychological reports prepared by various professionals. The court found various factors of mitigation and aggravation and then, making the questioned finding, imposed the sentence.

Section 5—8—4(b) of the Unified Code of Corrections (Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—4(b)) provides that a consecutive sentence may be imposed where the court finds, considering the nature and circumstances of the offense and the character of the defendant,

that consecutive sentences are necessary to protect the public from further criminal conduct of the defendant.

■ The imposition of a sentence is uniquely within the province of the trial court, since it has a much better opportunity to view and evaluate the appropriate factors. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368 N.E.2d 882, 884.) Accordingly, the imposed sentence will not be disturbed, absent an abuse of discretion of the trial court. (*Perruquet*, 68 Ill. 2d at 154, 368 N.E.2d at 884.) This standard applies equally to the imposition of consecutive sentences. See *People v. Steppan* (1985), 105 Ill. 2d 310, 323, 473 N.E.2d 1300, 1307.

Defendant maintains the court failed to give proper regard to the nature and circumstances of the offenses. He believes the court failed to also give proper weight to several mitigating factors. He observes, for example, that he had no criminal record and much of the conduct was due to his frontal lobe injury. He further notes that all the offenses occurred through the use of his law license, which he no longer has. He insists that, without it, he is not likely to commit further offenses. This may be true.

■ However, the record also establishes the defendant is a very bright and articulate man. One report indicated that, when in the manic phase, defendant can be charming, persuasive, and deceptive. This, coupled with the frontal lobe injury, which results in defendant acting impulsively to satisfy his immediate need, paints a picture of future deceptive actions and possible criminal conduct waiting to occur. Possibly the surrender of the law license would avoid this and, then again, possibly not. While we may have weighed the factors differently, that is not the operative question. It is well settled that a reviewing court will not substitute its judgment for the sentencing court, simply because it would have balanced the appropriate factors differently if the sentencing function had been that of the reviewing court. (*Perruquet*, 68 Ill. 2d at 156, 368 N.E.2d at 885; *People v. Pittman* (1982), 93 Ill. 2d 169, 178, 442 N.E.2d 836, 840; *Steppan*, 105 Ill. 2d at 323, 473 N.E.2d at 1307.) Here, the court considered and balanced the appropriate factors and came to a reasoned judgment. Accordingly, we find no abuse of discretion.

Affirmed.

SPITZ and McCULLOUGH, JJ., concur.