THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES
BYRON, Defendant-Appellant.

Third District    No. 3—94—0402

Opinion filed January 13, 1995.

450

Bartholomew Markese, of Naughton & Markese, of Joliet, for appellant.

James Glasgow, State's Attorney, of Joliet (John X. Breslin and Gary F. Gnidovec, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE LYTTON delivered the opinion of the court:

The defendant, James Byron, was convicted of aggravated criminal sexual abuse. (Ill. Rev. Stat. 1989, ch. 38, par. 12—16(c)(1)(i).) He was sentenced to a two-year term of conditional discharge. He appeals, and we affirm.

At trial, the victim, T.C., testified that on the morning of July 10, 1991, he went with his brother and his grandfather to the defendant's farm. When they arrived at the farm, the defendant and T.C. "jogged a horse" together. T.C. explained that when someone "jogs a horse" he rides in a cart that is attached to the horse. He stated that a usual jog for a horse takes about 30 minutes to complete.

According to T.C., when he and the defendant jogged the horse, T.C. sat between the defendant's legs with his feet in the stirrups. After they jogged the first horse, T.C.'s brother and grandfather left the farm.

T.C. and the defendant then jogged another horse. After about four or five laps around the track, the defendant placed his hand underneath T.C.'s underwear and began rubbing T.C.'s penis. The defendant continued rubbing his penis until they had completed jogging the horse. While the defendant did so, he told T.C. that it was their own little secret and not to tell anyone.

T.C. further testified that Jack Pfeiffer and the defendant's cousin, Peggy Chapman, were in the barn when T.C. and the defendant returned from the track. T.C. did not tell them what had happened because he was scared. T.C. then watched the defendant jog another horse until the defendant drove him home.

As soon as he arrived home, T.C. told his sister that he had been with the defendant and the defendant had grabbed his penis. She immediately called T.C.'s mother at work. T.C. then talked to his mother on the phone. At this point in T.C.'s testimony, the defendant objected to any further testimony regarding these conversations. Specifically, the defendant argued that no proper foundation had been laid for that testimony. He also argued that T.C.'s testimony was inadmissible hearsay since the State was trying to bolster T.C.'s credibility through the use of self-serving statements. The trial court overruled the defendant's objection.

T.C. then continued to testify about the conversation that he had on the phone with his mother. He stated that he told his mother that the defendant had reached into his pants and rubbed his penis. He also noted that he was interviewed by police officers at 5 p.m. and again a few hours later. He did not testify to the substance of those conversations.

On cross-examination, T.C. admitted that he did not speak to anyone after the incident until he returned home and spoke to his sister.

After T.C. testified, the court held a hearing to determine whether certain hearsay statements were admissible pursuant to section 115—10 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1989, ch. 38, par. 115—10). At the hearing, T.C.'s mother and sister testified to the statements T.C. made to each of them. Their testimony was consistent with T.C.'s testimony about what he had told them. Additionally, T.C.'s sister testified that although she did not know what time T.C. got home that day, she thought that it was sometime in the afternoon. T.C.'s mother testified that when she talked to T.C. on the phone at around 12:30 p.m. he was very upset. The trial court overruled the defendant's objection to the admission of the testimony of T.C.'s mother and sister.

Later in the trial, the court held a second section 115—10 hearing concerning the statements that T.C. made to two police officers. Officer Terry Kreimeier testified that he spoke to T.C. at 3 p.m. on the day of the incident for 30 minutes. Kreimeier's testimony concerning T.C.'s statement to him was consistent with T.C.'s testimony about what happened that day. Officer Joseph Farmer testified that he spoke to T.C. at 7:30 p.m. on the day of the incident. Farmer's testimony was also consistent with T.C.'s testimony. The trial court overruled the objection to the admission of the police officers' testimony.

On appeal, the defendant contends that he was deprived of a fair trial by the admission of T.C.'s statements into evidence. The defen-

dant first argues that T.C.'s in-court testimony about his statements to his mother, sister, and the police were self-serving and improperly bolstered T.C.'s credibility.

The State responds by noting that the testimony is not hearsay, and, in the alternative, argues that the testimony is admissible under the spontaneous declaration exception to the hearsay rule. Although the State did not argue at trial that the testimony was a spontaneous declaration, we note that an appellee may assert any argument to sustain a judgment as long as that argument is supported by the record. *People v. Hamm* (1992), 149 Ill. 2d 201, 595 N.E.2d 540.

It is well established that proof of a prior consistent statement made by a witness is hearsay and therefore inadmissible to bolster the witness' trial testimony. (*People v. Powell* (1973), 53 Ill. 2d 465, 292 N.E.2d 409.) However, a prior consistent statement may be admitted if the statement was a spontaneous declaration. (*People v. Davis* (1984), 130 Ill. App. 3d 41, 473 N.E.2d 387.) To constitute a spontaneous declaration, three factors must be present: (1) an occurrence which is sufficiently startling to produce a spontaneous unreflecting statement; (2) the absence of time to fabricate; and (3) the statement must relate to the circumstances of the occurrence. (*People v. Potts* (1992), 224 Ill. App. 3d 938, 586 N.E.2d 1376.) The admissibility of spontaneous declarations should be determined on a case-by-case basis after considering all relevant factual considerations. *People v. Hatfield* (1987), 161 Ill. App. 3d 401, 514 N.E.2d 572.

■ In the instant case, T.C.'s testimony concerning his conversations with his mother and sister on the day of the incident was admissible under the spontaneous declaration rule. Certainly the occurrence was startling enough to produce an unreflecting statement. Additionally, there was only a brief passage of time between the occurrence and the statements, and T.C. reported the occurrence to his mother and sister at the first opportunity. Finally, the statement was directly related to the occurrence. Therefore, we find no error in the admission of T.C.'s testimony about his statements to his mother and sister.

■ Furthermore, T.C.'s testimony that he spoke to two police officers does not constitute hearsay. A witness may testify that he had a conversation with an individual as long as the witness does not reveal the substance of the conversation. (See *People v. Batson* (1992), 225 Ill. App. 3d 157, 587 N.E.2d 549.) Since T.C. did not testify to the substance of the conversations, his testimony was admissible.

■ Within his first argument, the defendant contends that it was reversible error to hold the section 115—10 hearings about T.C.'s testimony after T.C. had testified. However, we note that the record

does not support the defendant's allegations that the section 115—10 hearings were held to determine the admissibility of T.C.'s in-court testimony. From our reading of the record, the hearings were held to determine whether T.C.'s mother, sister, and the two police officers could testify about the statements that T.C. had made before trial. Consequently, we find no error in holding the hearings after T.C.'s testimony.

Next, the defendant argues that he was denied a fair trial by the repetition of T.C.'s statements by T.C., his mother, his sister, and the police. As noted, T.C.'s prior consistent statements were admissible under the spontaneous declaration exception. T.C.'s mother, sister, and the police, however, testified pursuant to section 115—10. Regarding the repetitive nature of such testimony, the appellate court has stated:

"The legislature by enacting section 115—10 obviously determined that a corroborative complaint is sufficiently reliable to enjoy an exemption from the rule against hearsay evidence. [Citation.] A second or third complaint is no less reliable or credible. True, there is opportunity for exaggeration or embellishment ***. This factor is remedied though through cross-examination ***.

Youthful victims *** obviously become more credible, reliable and understandable when supported by corroborative complaint testimony from adults. Those who are close to the victim or who have interviewed the victim and investigated the alleged incident should not be curtailed from testifying and aiding the victim merely because of their numbers ***." (*People v. Branch* (1987), 158 Ill. App. 3d 338, 340-41, 511 N.E.2d 872, 873-74.)

Nevertheless, a defendant may be granted a new trial based on the admission of repetitive testimony when the case is closely balanced and it appears that the scales of justice have been unfairly tilted by the sheer weight of repetition. *People v. Anderson* (1992), 225 Ill. App. 3d 636, 587 N.E.2d 1050.

■ As was noted in *Branch,* people who are close to the victim or who have interviewed the victim should not be barred from testifying simply because of their numbers. Each individual that corroborated T.C.'s testimony was subject to a thorough cross-examination. Most important, this case was not so closely balanced that the defendant should be awarded a new trial because of repetitive testimony. The record shows that T.C. gave very consistent and credible testimony. The admission of T.C.'s statements was not unnecessarily duplicative, prejudicial, or cumulative.

■ Finally, the defendant contends that the trial court erred by admitting T.C.'s statements into evidence because they failed to

satisfy the statutory requirements for a section 115—10 hearing. Specifically, he argues that there is nothing in the statements themselves that establishes their reliability. As previously noted, since T.C.'s in-court testimony was not subject to a section 115—10 hearing, and we found his testimony independently admissible, we will only address the testimony given by T.C.'s mother, his sister, and the police.

Section 115—10 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1989, ch. 38, par. 115—10) permits testimony of out-of-court statements by victims of sexual offenses who are under 13 years of age. In a hearing conducted pursuant to section 115—10, the testimony shall only be admitted if the court finds that the time, content, and circumstances of the statement provide sufficient safeguards of reliability. (Ill. Rev. Stat. 1989, ch. 38, par. 115—10(b)(1).) Some factors which may be considered to determine reliability are: the child's spontaneous and consistent repetition of the incident, the child's mental state, the use of terminology unexpected of a child of similar age, and the lack of a motive to fabricate. (*People v. West* (1994), 158 Ill. 2d 155, 632 N.E.2d 1004.) A trial court has considerable discretion in determining the admissibility of hearsay statements. (*People v. Zwart* (1992), 151 Ill. 2d 37, 600 N.E.2d 1169.) Thus, a reviewing court will not disturb a trial court's finding absent an abuse of discretion. *People v. West* (1994), 158 Ill. 2d 155, 632 N.E.2d 1004.

Here, the testimony of T.C.'s mother, sister, and the police satisfied the statutory requirements for a section 115—10 hearing. As previously noted, T.C.'s statements to his mother and his sister were made soon after the incident. Further, T.C.'s mother testified that T.C. was very upset when he told her what had happened. Additionally, T.C. spoke to both police officers on the same day of the incident. The officers' testimony regarding T.C.'s statements was substantially similar to T.C.'s testimony. Finally, nothing in the record suggests that the interviews were coercive or threatening. Therefore, the trial court did not abuse its discretion in admitting these statements into evidence.

Accordingly, the judgment of the circuit court of Will County is affirmed.

Affirmed.

STOUDER, P.J., and McCUSKEY, J., concur.