THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WILLIAM COURTNEY, SR., Defendant-Appellant.

Third District    No. 3—96—0640

Opinion filed May 30, 1997.—Modified on denial of rehearing July 16, 1997.

1026

Raymond G. Bendig, of Chicago, for appellant.

Michael Kick, State's Attorney, of Kankakee (John X. Breslin and Gary F. Gnidovec, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McCUSKEY delivered the opinion of the court:

Following a bench trial, the defendant, William Courtney, Sr., was convicted of four counts of aggravated criminal sexual assault (720 ILCS 5/12—14(a)(3) (West 1994)) and one count of aggravated criminal sexual abuse (720 ILCS 5/12—16(b) (West 1994)). The defendant was sentenced to two concurrent 16-year terms of imprisonment in the Illinois Department of Corrections.

On appeal, the defendant claims: (1) his trial counsel was ineffective; (2) he was not proven guilty beyond a reasonable doubt; (3) the trial court erred in not appointing a special prosecutor after the defendant's initial attorney was appointed State's Attorney; (4) the trial court committed reversible error in admitting hearsay statements pursuant to section 115—10 of the Code of Criminal Procedure of 1963 (the Code) (725 ILCS 5/115—10 (West 1994)); and (5) he was denied a fair trial because the trial court prejudged the case.

After carefully reviewing the record and applicable law, we reverse the defendant's conviction and remand the case for a new trial because we find a *per se* conflict of interest existed which required the appointment of a special prosecutor.

We find no merit to the defendant's claim that the trial court erred in admitting section 115—10 statements. Moreover, there is no support in the record for the defendant's contention that the trial court was prejudiced against him and his claim that he was not proven guilty beyond a reasonable doubt. As a result, we find these issues are without merit. Additionally, due to our decision to reverse the defendant's conviction and remand the cause for a new trial, it is not necessary for this court to address the defendant's claim that he was denied the effective assistance of counsel.

## FACTS

The victim, B.C., is the defendant's granddaughter. She was three years old at the time of the alleged abuse. Shelly, B.C.'s mother, was divorced from William Jr., the defendant's son, a year and a half after B.C. was born. William Jr. lived with his parents and had visitation with B.C. every other weekend. Usually, the defendant or his wife would pick up B.C. for visitation.

At the section 115—10 hearing and at trial, Shelly testified that, on March 22, 1993, she discovered B.C. fondling herself and asked her if anyone had touched her there. B.C. said her grandpa touched her there and then immediately stated that it was her father who did

the touching. When Shelly told B.C. that it was very important to tell the truth, B.C. said that the defendant had told her to say her father did it.

Nine days after seeing B.C. fondle herself, Shelly took B.C. to a pediatrician, Dr. You Sim Kim. Thereafter, Shelly took B.C. to the emergency room at St. Mary's Hospital. After emergency room personnel called the police, Shelly went to the Momence police department.

Shelly saw B.C. fondling herself again on March 28, 1993. At the time of this incident, B.C. said that her grandpa had put his fingers between her legs and played a game. Later that evening, with Shelly's mother present, B.C. said the defendant played this game with her on several occasions.

Shelly's mother, Linda Duke, also testified at the section 115—10 hearing and at trial. Duke stated that B.C. would not kiss the defendant goodbye after a visit and complained to her about pain in her lower stomach and anus. She said that B.C. could not go to the bathroom, and in response to a question if anyone had hurt her, B.C. said that the defendant had put something in her and it got bigger and bigger and hurt. While making this statement, B.C. pointed to her vaginal area and anus.

Christy Horn testified that she was present with Shelly and B.C. when B.C. spontaneously told Horn that the defendant had touched her and hurt her bad and she was going to spank him for it. Again, B.C. pointed to her vaginal area when making this statement.

Sergeant Jo Mulcahy, a 17-year veteran of the Kankakee County sheriff's department, testified that she had a private meeting with B.C. at Shelly's residence. Sergeant Mulcahy used anatomically correct dolls during the interview. B.C. told Mulcahy that the defendant had put his finger in her vagina several times. B.C. demonstrated how this occurred by using dolls that represented the defendant and herself. At first, B.C. said that her father did this to her as well. Later, she clarified her statement by saying that only the defendant had abused her.

At trial, Dr. Kim testified that she had never prescribed or recommended a stool softener for B.C. Dr. Patricia Tiernan, an obstetrician-gynecologist, testified that during her examination of B.C. she discovered a "skin tag" on B.C.'s anus. Dr. Tiernan testified that a skin tag is caused by the stretching of the skin around the anus. On cross-examination, Dr. Tiernan admitted that a skin tag could be caused by an oversized stool.

B.C. testified that during one visitation the defendant led her to the bedroom and took her clothes off. He turned her over on her

stomach and stuck his "private" into her "butt." She tried to get away, but he held her down. B.C. testified that the defendant had done this to her "a lot." B.C. said that, on another occasion, she was sleeping and woke up when the defendant touched her with his "private" and stuck his finger in her vagina.

The testimony at trial indicated that B.C. had a history of urinary and bowel movement difficulties. The defendant and his wife testified that they would insert rectal suppositories into B.C. to help B.C. go to the bathroom. B.C. denied that her grandparents had ever given her any medication for her elimination problems. The defendant testified that he had inserted the suppositories on occasion, but only when his wife was present. The defendant denied ever sexually abusing B.C.

The defendant's initial trial attorney, Michael Kick, first appeared as the defendant's counsel on September 21, 1993. Kick represented the defendant by making numerous court appearances, answering discovery and filing various documents in the case. Kick withdrew as the defendant's counsel on November 10, 1994, because the defendant could not pay him. However, Kick was subsequently appointed public defender to again represent the defendant. A few days after Kick was assigned to be the defendant's public defender, the defendant's representation was reassigned to Public Defender Alan Kuester. Kuester served as the defendant's counsel for the remainder of the trial proceedings. Kick was appointed State's Attorney of Kankakee County in September 1995.

On September 22, 1995, the trial court, prior to the beginning of a status hearing, inquired about a possible conflict of interest now that Kick was serving as State's Attorney. An off-the-record discussion took place between the judge, Kuester and the assistant State's Attorney assigned to prosecute the defendant's case. On the record, Kuester indicated that he had mentioned the potential conflict of interest to the defendant. The trial judge stated: "All right. Motion of the State to continue in order that a special prosecutor can be appointed to handle the case in view of the potential conflict due to the fact that the State's Attorney was Mr. Courtney's attorney is allowed." The assistant State's Attorney then told the trial judge that a special prosecutor would appear to represent the State in two to three weeks.

On October 6, 1995, the prosecutor again acknowledged the necessity of having a special prosecutor appointed. The assistant State's Attorney told the trial court, "This is one where the special prosecutor will be appointed."

On November 3, 1995, the trial court asked the prosecutor if

someone from the Illinois Attorney General's office would be handling the defendant's prosecution. The assistant State's Attorney responded, "It's ours." Finally, on December 14, 1995, the parties were discussing the delay in setting a trial date. The assistant State's Attorney stated: "And then for a while because we thought the [Attorney General] may be coming in. He is not coming in. He is only supervising the case. We are ready for trial." The record is clear that defendant's counsel did not object to the absence of a special prosecutor.

Following the defendant's conviction, Kuester filed a motion for a new trial, raising for the first time the claim that a special prosecutor should have been appointed. The trial court denied the defendant's motion and then sentenced the defendant to two concurrent 16-year terms of imprisonment. This timely appeal followed.

## CONFLICT OF INTEREST

We will first review the defendant's claim that a conflict of interest existed that mandates remanding the case for a new trial. The defendant argues that because Michael Kick initially represented the defendant and became State's Attorney during the prosecution of the defendant's case, the trial court should have appointed a special prosecutor to intervene and represent the office of the Kankakee County State's Attorney.

■ As an initial response, the State claims that the defendant has waived this issue because he did not object at trial to the court's failure to appoint a special prosecutor. The waiver rule is one of administrative convenience rather than jurisdiction. *People v. Farmer*, 165 Ill. 2d 194, 200, 650 N.E.2d 1006, 1009 (1995). The law is well settled that the waiver rule is a limitation on the parties, not on the reviewing court. *People v. Lowe*, 153 Ill. 2d 195, 199, 606 N.E.2d 1167, 1170 (1992).

The record on appeal is clear that the conflict of interest issue was raised several times by the attorneys and the trial court. In addition, the defendant raised the issue in his post-trial motion for a new trial. Initially, all parties and the trial judge agreed that a special prosecutor was needed and would be appointed. Then, on November 3, 1995, the assistant State's Attorney informed the court that a special prosecutor would not be coming into the case. In the interests of obtaining a just result, as well as maintaining a sound body of precedent (*Farmer*, 165 Ill. 2d at 200, 650 N.E.2d at 1009), we decline to find waiver in this case. Therefore, we will now address the merits of the defendant's argument.

■ It has long been the law in Illinois that "an attorney cannot

represent conflicting interests or undertake to discharge inconsistent duties." *People v. Gerold*, 265 Ill. 448, 477, 107 N.E. 165, 177 (1914). This "rigid" rule is designed to protect against an actual conflict of interest and the *appearance* of such a conflict: "It is unnecessary that the prosecuting attorney be guilty of an attempt to betray confidence; *it is enough if it places him in a position which leaves him open to such charge* \*\*\*. [Citation.] The administration of the law should be free from all temptation and suspicion, so far as human agencies are capable of accomplishing that object \*\*\*." (Emphasis added.) *Gerold*, 265 Ill. at 479, 107 N.E. at 177. In noting the ethical obligation and professional responsibility of an attorney to guard the confidences of his client, this court has said "it is the *possible divulgence or use* of information given counsel in confidence that is the evil to be guarded against." (Emphasis added.) *People v. Price*, 196 Ill. App. 3d 321, 324, 553 N.E.2d 760, 762 (1990).

Here, in the case at hand, the parties have not cited, and our research has failed to discover, a single reported decision in our State that is exactly on point. The issue on appeal is whether a *per se* conflict of interest exists when a defendant's former trial counsel subsequently becomes head of the office that prosecutes the defendant. The defendant argues that, when this situation arises, the trial court must appoint a special prosecutor to handle the prosecution of the defendant. We agree with the defendant's argument and find that a special prosecutor should have been appointed in this case.

The State contends that our decision in this case should be controlled by the analysis set forth in *Price*. We do not agree. In *Price*, the appellate court affirmed a conviction where an assistant public defender appeared briefly *one time* on behalf of a defendant and was later elected State's Attorney. The court noted that the State's Attorney did not have a significant role in the defendant's case, barely spoke to the defendant, if at all, regarding the case, appeared briefly on an uncontested motion and had no other involvement in the case after being elected State's Attorney. *Price*, 196 Ill. App. 3d at 324-25, 553 N.E.2d at 762.

In contrast, here, Kick was intimately involved in the defendant's representation prior to becoming State's Attorney. The record shows that Kick made numerous court appearances on behalf of the defendant and was clearly privy to the defendant's confidences.

Many of our sister states have addressed the same issue in cases having similar factual patterns. In *State v. Cooper*, 63 Ohio Misc. 1, 409 N.E.2d 1070 (1980), the defendant was represented by two public defenders. Subsequently, one of the defendant's attorneys became an assistant prosecutor for the county. The defendant claimed a conflict

of interest. The reviewing court noted that the conflicted attorney "did not at any time communicate to his new colleagues on the prosecutor's staff any information he may have become privy to while serving the defendant." *Cooper*, 63 Ohio Misc. at 6, 409 N.E.2d at 1073. Nonetheless, the court concluded that, because of the "overriding requirement that the public must be able to maintain the right to believe in the total integrity of the Bar as a whole," the county prosecutor and his staff must be precluded from conducting the case and a special prosecutor must be appointed. *Cooper*, 63 Ohio Misc. at 6-7, 409 N.E.2d at 1073.

In *Arizona v. Latigue*, 108 Ariz. 521, 502 P.2d 1340 (1972), the public defender received confidential communications from the defendant and had access to all records and information pertaining to the defendant's case. Defense counsel subsequently became the County Attorney's chief deputy, exercising supervisory authority over the assistant County Attorney who prosecuted the defendant. *Latigue*, 108 Ariz. at 523, 502 P.2d at 1342. The Supreme Court of Arizona noted that "[j]ustice and the law must rest upon the complete confidence of the thinking public and to do so they must avoid even the appearance of impropriety." *Latigue*, 108 Ariz. at 523, 502 P.2d at 1342. The court concluded that in order for the prosecution of the defendant to go forward, a special prosecutor must be appointed from outside the office of the County Attorney.

Similarly, in *New York v. Shinkle*, 51 N.Y.2d 417, 415 N.E.2d 909, 434 N.Y.S.2d 918 (1980), the executive director of the Legal Aid Society was actively involved in the preparation of the defendant's case. Subsequently, the attorney resigned from the Legal Aid Society and was appointed chief assistant District Attorney for Sullivan County. The new prosecutor took several measures designed to insure he had no involvement in the prosecution of the cases that he had acquired knowledge of as a legal aid director. Nonetheless, the Court of Appeals of New York concluded:

> "The fact that the attorney who had initially represented defendant and participated actively in the preparation of his defense was chief assistant in the office of the prosecutor in the months preceding and during defendant's trial inescapably gave both defendant and the public the unmistakable appearance of impropriety and created the continuing opportunity for abuse of confidences entrusted to the attorney ***. It is no answer that defendant offers no evidentiary proof of actual prejudice. In the circumstances such proof would most likely be out of defendant's reach." *Shinkle*, 51 N.Y.2d at 420-21, 415 N.E.2d at 910, 434 N.Y.S.2d at 920.

The New York court vacated the defendant's conviction and remanded the case to the trial court because of the "inherent impropriety" of the conflict situation.

■ In Illinois, the statutory duties of a State's Attorney are prescribed by the General Assembly. See 55 ILCS 5/3—9001 *et seq.* (West 1994). It is well-settled law that the State's Attorney controls the internal operations of his or her office. 55 ILCS 5/3—9006 (West 1994). The State's Attorney is responsible for the professional conduct and acts of his or her assistants. *People v. Dread*, 27 Ill. App. 3d 106, 112, 327 N.E.2d 175, 179 (1975).

Here, in the instant case, the record reveals that the conflict of interest was brought to the attention of the trial court, and the assistant State's Attorney led the judge to believe that the situation would be resolved by the appearance of a special prosecutor. However, the record is clear that a special prosecutor never appeared and none was appointed by the trial court. In a case like the one before us, where the conflict of interest involves the head of the State's Attorney's office, we adopt the analysis set forth in *Cooper*, *Latigue* and *Shinkle*.

■ As an aside, the State draws our attention to a letter from the Illinois Attorney General's office dated November 8, 1995. The letter states that the Kankakee County State's Attorney's office will "maintain control and responsibility" for the defendant's case, but the Attorney General's office will "replace the current State's Attorney in your chain of command." The State argues that the letter from the Attorney General's office proves that no conflict of interest existed. We find this argument to be unpersuasive and without merit.

After reviewing the record, we find that the letter tells this court absolutely nothing about what involvement, if any, State's Attorney Kick had in the preparation of the State's case against the defendant. It is for this precise reason that we find a *per se* conflict of interest in this case. Further, we agree with the court's opinion in *Shinkle* that it is not the defendant's burden to prove Kick's involvement, or the lack thereof, in this case. The State has clearly failed to show why a special prosecutor should not have been appointed once Michael Kick became the State's Attorney of Kankakee County.

As a result of Kick's former role as the defendant's attorney, we hold that a *per se* conflict of interest existed that affects all the prosecutors in the Kankakee County State's Attorney's office. Consequently, the conflict of interest requires the appointment of a special prosecutor upon remand. For the reasons stated, we reverse the defendant's conviction and remand the cause to the circuit court for a new trial.

In the interest of judicial economy, we now address the defendant's other claims which may recur upon remand.

## HEARSAY STATEMENTS

The defendant claims the trial court erred in admitting hearsay statements pursuant to section 115—10 of the Code (725 ILCS 5/115—10 (West 1994)). We find no merit to this claim.

■ Section 115—10 of the Code provides an exception to the hearsay rule in cases involving prosecutions for various sex crimes perpetrated against a child under the age of 13. The child's statements to others, concerning the subject of the prosecution, are admissible if the trial court finds, after conducting a hearing outside the presence of the jury, that: (1) the time, content and circumstances of the statements provide sufficient safeguards of reliability; and (2) the child testifies at the proceedings or is unavailable and there is corroborative evidence of the act that is the subject of the statement. 725 ILCS 5/115—10(b) (West 1994); *People v. Byron*, 269 Ill. App. 3d 449, 454, 645 N.E.2d 1000, 1004-05 (1995).

■ Some factors that may be considered to determine reliability of the statements are: (1) the child's spontaneous and consistent repetition of the incident; (2) the child's mental state; (3) the use of terminology expected of a similar age child; and (4) the lack of motive to fabricate. *Byron*, 269 Ill. App. 3d at 454, 645 N.E.2d at 1005. The trial court has a considerable amount of discretion in determining the admissibility of hearsay statements. *Byron*, 269 Ill. App. 3d at 454, 645 N.E.2d at 1005. Therefore, a reviewing court will not disturb the trial court's determination absent an abuse of discretion. *Byron*, 269 Ill. App. 3d at 454, 645 N.E.2d at 1005. The key determination is whether the circumstances surrounding the making of the statements render the declarant particularly worthy of belief. *People v. Hubbard*, 264 Ill. App. 3d 188, 193, 636 N.E.2d 1095, 1099 (1994).

■ Most of B.C.'s statements were made within days of the last incident of abuse. None of the witnesses who testified during the section 115—10 hearing used leading questions to elicit her statements and some of B.C.'s statements were spontaneous. B.C. consistently stated, in language one would expect from a child her age, how the defendant sexually abused her on numerous occasions. Moreover, there is no evidence in the record to suggest that B.C. had any motivation to fabricate.

After reviewing the record, we conclude that the time, content and circumstances of B.C.'s statements provide sufficient safeguards of reliability. Accordingly, we find that the trial court's decision to admit the statements pursuant to section 115—10 was not an abuse of discretion.

## IMPARTIALITY OF THE TRIAL COURT

■ Next, the defendant argues that he was denied a fair trial because the trial court prejudged his case. The defendant bases his argument on an isolated comment the trial court said in an exchange with defense counsel:

"Q. [Defense Counsel:] Isn't it a fact the mother was upset because of all the people wanting to talk with her daughter?

[Assistant State's Attorney:] Objection, calls for him to go inside the mind of the mother.

[Trial Court:] What difference does it make if she was upset?

[Defense Counsel:] Well, judge he said that she was highly upset. I think we have a right to question on that point.

[Trial Court:] Her being upset or her not being upset is not probative of much of anything in the case. I would expect she was upset, her daughter was molested, which would be normal. She could be upset by the number of people who wanted to talk to her daughter *** but your objection is quite right asking him to define what upset her, alleged molestation or all these people wanted to talk to the daughter."

When the trial judge's comments are viewed in context, we find no showing of bias against the defendant. It is clear the trial judge was referring to how the mother might have been feeling at the time of the revelations concerning her daughter's abuse. In addition, we note that towards the end of the statement, the trial judge said "alleged molestation." From our review, we find nothing improper in the judge's remarks.

## SUFFICIENCY OF THE EVIDENCE

■ Finally, we find there was ample evidence presented to prove the defendant guilty beyond a reasonable doubt. When presented with a challenge to the sufficiency of the evidence, it is the function of a reviewing court to determine if the evidence presented at trial, viewed in the light most favorable to the prosecution, is sufficient for any rational trier of fact to find the defendant guilty beyond a reasonable doubt. *People v. Collins*, 106 Ill. 2d 237, 261, 478 N.E.2d 267, 277 (1985). In a sexual assault case, the victim's testimony alone, if positive and credible, is sufficient to sustain a conviction. *People v. Brown*, 122 Ill. App. 3d 452, 454, 461 N.E.2d 71, 74 (1984).

■ It is the function of the trier of fact to determine the credibility of the witnesses and the weight to be given their testimony. *People v. Locascio*, 106 Ill. 2d 529, 537, 478 N.E.2d 1358, 1361 (1985). When the evidence is merely conflicting, a reviewing court will not substitute its judgment for that of the trier of fact. *Locascio*, 106 Ill. 2d at 537, 478 N.E.2d at 1361.

██ The State was required to prove: (1) the defendant was 17 years of age or older at the time of the crime; (2) the defendant committed an act of sexual penetration with B.C.; and (3) B.C. was under 13 years of age when the acts were committed. There is no dispute concerning the ages of the defendant and B.C. B.C. testified clearly and at length regarding the abuse. Moreover, the trial court found her to be a credible witness. The court found the evidence of the defendant's guilt to be "overwhelming." There was also testimony from numerous other witnesses concerning the allegations of abuse. The judge heard the witnesses and weighed the evidence presented at trial. When viewed in a light most favorable to the State, we find there was sufficient evidence for the trial court to determine that the defendant was proven guilty beyond a reasonable doubt. In reaching this conclusion, we do not suggest any implication of the defendant's guilt or innocence that would be binding in a new trial. From our review of the evidence, the defendant may be retried without violating his constitutional right against double jeopardy. *People v. Taylor*, 76 Ill. 2d 289, 309-10, 391 N.E.2d 366, 375 (1979).

For the reasons stated, the judgment is reversed, and the cause is remanded so the defendant can receive a new trial with a special prosecutor to be appointed by the circuit court of Kankakee County.

Reversed and remanded.

SLATER and HOMER, JJ., concur.