NOTICE
Decision filed 11/23/20. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2020 IL App (5th) 180280-U

NO. 5-18-0280

IN THE

NOTICE
This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Jefferson County. |
| | ) | |
| v. | ) | No. 15-CF-463 |
| | ) | |
| GARRETT McELVEEN, | ) | Honorable |
| | ) | Barry L. Vaughan, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE BARBERIS delivered the judgment of the court.
Justices Cates and Wharton concurred in the judgment.

**ORDER**

¶ 1    *Held*: The judgment of conviction is affirmed where defendant waived review of his claim regarding the state's attorney's conflict of interest by voluntarily, and knowingly, entering into a guilty plea.

¶ 2    Defendant, Garrett V. McElveen, entered an open guilty plea to three counts of predatory criminal sexual assault of a child (720 ILCS 5/11-1.40(a)(1) (West 2014)) in exchange for a dismissal of eight counts of predatory criminal sexual assault of a child and one count of sexual exploitation of a child (*id.* § 11-9.1(a)), for which he received an aggregate 120-year prison sentence (40-year consecutive sentence on each of the three counts). Defendant appeals, contending that a conflict of interest arose when his

1

appointed attorney, Jefferson County's Chief Public Defender Sean Featherstun, was later elected Jefferson County State's Attorney. We affirm.

¶ 3                                    I. Background

¶ 4      On December 15, 2015, defendant was initially charged by information, but later indicted with 11 counts of predatory criminal sexual assault of a child (720 ILCS 5/11-1.40(a)(1) (West 2014) (counts I-IV), (720 ILCS 5/11-1.40(a)(1) (West 2012) (counts V-XI)), Class X felonies. The indictment alleged that counts I through IV occurred between January 2015 and December 7, 2015, and counts V through XI occurred from July 2013 through September 2015. Each count carried a mandatory consecutive enhanced sentencing range of 6 to 60 years (see 720 ILCS 5/11-1.40(b)(1) (West 2014) (counts I-IV), 720 ILCS 5/11-1.40(b)(1) (West 2012) (counts V-XI)); (see also section 5-8-4 of the Unified Code of Corrections (730 ILCS 5/5-8-4(d)(2) (West 2014) (counts I-IV), 730 ILCS 5/5-8-4(d)(2) (West 2012) (counts V-XI)). The indictment also contained one count of sexual exploitation of a child (720 ILCS 5/11-9.1(a) (West 2012)), a Class 4 felony. The next day, the circuit court appointed Featherstun to represent defendant in the matter.

¶ 5      On December 22, 2015, the case was called for arraignment and Assistant Public Defender (APD) Scott Quinn appeared with defendant. Featherstun was not present. On APD Quinn's oral motion, without defendant's approval, the circuit court appointed APD Quinn to represent defendant, effectively removing Featherstun as defendant's court-appointed attorney for "judicial economy purposes." APD Quinn then asked for a brief postponement of defendant's arraignment to allow him time to discuss the charges with defendant. The court subsequently reset the arraignment on January 6, 2016. On January

4, 2016, APD Quinn filed the first motion for discovery and then represented defendant at the arraignment on January 6, 2016.

¶ 6    On January 20, 2016, the circuit court held the first of many status and motion hearings in which APD Quinn appeared on behalf of defendant. In November 2016, Featherstun was elected Jefferson County State's Attorney.

¶ 7    On January 9, 2017, the circuit court held the first status hearing since Featherstun took office. The sole purpose of the hearing was to set a date for a contested hearing, pursuant to section 115-10 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-10 (West 2016)), concerning the State's January 5, 2017, motion *in limine* to admit certain hearsay statements made by the victim at trial. During the status hearing, Assistant State's Attorney (ASA) Darrin Rice informed the court that Featherstun had been originally assigned to represent defendant, but he understood that Featherstun had not been involved in the case prior to APD Quinn's appointment as defendant's counsel. APD Quinn initially responded that he was unable to take a position as to Featherstun's past involvement, but later, after indicating that his memory had been "jogged," clarified his stance as follows:

> "I do recall that *** Featherstun was appointed, and it's my understanding that he never went over and spoke with [defendant]. He pretty quickly reassigned [the case] to me, but I don't—just off the top of my head, I don't know what the law says about whether a *per se* conflict starts up immediately or whatever. And so I think that the State's Attorney and Appellate Prosecutor did a little research for the State's Attorney's office about that. I wasn't privy to what their conclusions were. I will take no position on that at this time."

The court then set the matter for further hearing.

3

¶ 8    On January 19, 2017, the circuit court heard argument as to whether a special prosecutor should be appointed due to Featherstun's initial assignment as defendant's public defender and his subsequent position as the state's attorney. The State argued that no conflict of interest existed because Featherstun's appointment "was completely superficial," with no substantive interaction, and only existed as a "docket entry made." ASA Rice proffered that Featherstun did not meet with defendant, other than a brief encounter in the courtroom, where he introduced defendant to APD Quinn. Relying on *People v. Price*, 196 Ill. App. 3d 321 (1990), ASA Rice maintained that no conflict of interest existed, because (1) Featherstun never discussed details of the case with defendant, (2) the prosecution of the case was assigned to himself and ASA Sonja Ligon, and (3) Featherstun was not involved in the case after becoming the state's attorney.

¶ 9    In response, APD Quinn stated the following. Featherstun was appointed to represent defendant before APD Quinn, and Featherstun was APD Quinn's immediate supervisor at that time. He did not recall Featherstun "doing any supervisory acts" or telling APD Quinn anything about defendant's case other than the charges. APD Quinn further noted that Featherstun is now in a supervisory role over ASAs Rice and Ligon. As such, APD Quinn would continue to raise the objection over concerns that "the appearances" of a potential conflict of interest involving the state's attorney's office were clouding the ultimate finality of this case. APD Quinn clarified that his objection was not an attack on the integrity of Featherstun, ASA Rice, or ASA Ligon. Following APD Quinn's remarks, the following colloquy occurred:

4

"THE COURT: Okay. And did you say that Public Defender Sean Featherstun had no contact with this client?

MR. RICE [(ASSISTANT STATE'S ATTORNEY)]: Yes, sir—or, yes, ma'am. Yes.

THE COURT: Okay.

MR. RICE: I mean, other than what I mentioned. There was a brief exchange, I believe, whenever he was brought to court. That's what has been relayed to me, which I'm proffering for the Court's consideration.

THE COURT: Okay.

MR. QUINN ([DEFENSE COUNSEL])]: And I—I'll agree with that. I—I recall speaking—you know, being—having an introduction or something in the back hallway, but I don't recall any other—any other mutual contact between *** Featherstun and [defendant] and I.

\* \* \*

THE COURT: All right. Okay. I'm going to find that there is no conflict in this case. Okay?

MR. QUINN: That's fine.

MR. RICE: Yes. Yes, your Honor."

The circuit court then entered an order finding that no conflict of interest existed.

¶ 10    On June 30, 2017, a final pretrial hearing was held. ASA Ligon, APD Quinn, and defendant were present when defendant waived his right to a jury trial. However, shortly after the court accepted defendant's waiver, Featherstun entered the courtroom. APD Quinn requested to continue the trial setting to prepare a defense strategy for a bench trial, as opposed to a jury trial. ASA Ligon objected because the witnesses had been subpoenaed and she wanted to ensure that the delay was attributable to defendant. ASA Ligon further expressed that if the court did continue the trial, she wanted "the quickest trial date available," and that she would prefer an August trial date. During the

5

discussion, and in response to the court's inquiry, Featherstun responded that the State would not be prejudiced by a delay of the trial. According to Featherstun, the witnesses were all local, "doing well" and under subpoena. After the court asked Featherstun to suggest a date, the following exchange occurred:

> "MR. FEATHERSTUN [(STATE'S ATTORNEY)]: Judge, I—wasn't a bench trial—did they do a waiver?
> THE COURT: It was a waiver of jury.
> MR. FEATHERSTUN: So that pretty much frees us up for whatever day your honor would set and we could accommodate."

After further discussion, the court set the case for a three-day trial beginning September 19, 2017. Featherstun agreed with the court that "those dates would be good."

¶ 11    On September 18, 2017, APD Quinn informed the circuit court that the parties had reached an agreement, and, the following day, the court conducted a plea hearing. Defendant entered an open guilty plea to three counts of predatory criminal sexual assault of a child (720 ILCS 5/11-1.40(a)(1) (West 2014)) (counts I, III, and V) in exchange for a dismissal of the remaining nine counts. While giving the statutory admonishments, the court informed defendant that the sentencing range was 6 to 60 years in prison on each count, but the sentences were mandatorily consecutive, making the total sentencing range 18 to 180 years. Defendant acknowledged that he understood the sentencing range and that no promises had been made regarding the sentence. The court ordered a presentence investigation report (PSI), to check on the progress of the PSI, and set the matter for a status hearing on November 3, 2017. The case was subsequently set for sentencing.

¶ 12    On January 19, 2018, the sentencing hearing was held. The circuit court sentenced defendant to consecutive prison terms of 40 years on each count, thereby imposing a sentence totaling 120 years. Defendant later filed a timely motion to reconsider sentence requesting the court to review its findings regarding the sentencing factors and reduce his sentence accordingly. Defendant did not seek to withdraw his guilty plea at that time.

¶ 13    On May 1, 2018, the circuit court held a hearing on defendant's motion to reconsider sentence. Featherstun, on behalf of the State, APD Quinn, and defendant, who was in the custody of the Illinois Department of Corrections, were all present. The court first inquired of APD Quinn whether he had been the attorney throughout the proceedings. APD Quinn responded, "that's correct." Following APD Quinn's argument for a reduction in sentence, in which he argued that the 120-year sentence was too harsh because it effectively amounted to a life sentence, Featherstun argued on behalf of the State. Featherstun, arguing that the court imposed the proper sentence, stated that "you can shudder to think where it might have gone over the next five years for this young lady had her grandmother not walked in on what she walked in on." Featherstun ended by stating that the mid-range prison sentence was reasonable and that he "would stand on prior arguments of *** [ASA] Ligon that day at sentencing." The court then denied defendant's motion to reconsider sentence and informed him of his appeal rights. This timely appeal followed.

¶ 14                                    II. Analysis

¶ 15    On appeal, defendant claims that a *per se* conflict of interest existed during the pendency of his case that now warrants vacatur of his guilty plea, conviction, and

7

sentence as well as the appointment of a special prosecutor on remand. Defendant argues that the circuit court erred by not appointing a special prosecutor. In support, defendant points out that Featherstun initially represented defendant, and, after Featherstun was elected to the position of the state's attorney, participated in defendant's prosecution by representing the State during the entry of defendant's jury trial waiver and, later, in arguing against his motion to reconsider sentence. For that reason, defendant asserts that the State had a *per se* conflict of interest during the pendency of the case.

¶ 16 In response, the State urges us not to reach the merits of defendant's claim, asserting that defendant waived any potential error by entering a guilty plea. Alternatively, the State asserts that no *per se* or potential conflict of interest existed because Featherstun never participated in defendant's defense before holding the state's attorney position.

¶ 17 The issue of whether a prosecutor labored under a *per se* conflict of interest is reviewed *de novo*. *People v. Miller*, 199 Ill. 2d 541, 544 (2002) (citing *People v. Carlson*, 185 Ill. 2d 546, 551 (1999)). Before turning to the merits, we first consider the State's contention that defendant waived the issue by entering his guilty plea.

¶ 18 In support of its waiver argument, the State draws a factual distinction between the case at bar and *People v. Kester*, 66 Ill. 2d 162, 166, 169 (1977), where an ineffective assistance of counsel claim was raised on appeal based on a conflict of interest and the defendant's earlier guilty plea was not deemed a waiver. In *Kester*, the defendant entered a negotiated guilty plea to burglary and unlawful delivery of cannabis charges, in which he received concurrent prison terms. *Id.* at 169. At the time of his plea, the defendant was

8

represented by an assistant public defender who had earlier filed motions and appeared on three separate occasions as an assistant state's attorney in the case. *Id*. at 164. On appeal from the burglary conviction, the Illinois Supreme Court determined that a potential conflict of interest was present, and that the defendant had not knowingly waived the right to be represented by a conflict-free assistant public defender. *Id*. at 168-169. The supreme court noted that the record did not establish that the defendant was "in any manner admonished as to the significance of the potential conflict or that he was actually aware that his counsel had previously appeared on behalf of the prosecution in his burglary case." *Id*. The supreme court further found that no waiver existed because the plea of guilty was entered with the advice and counsel of an assistant public defender with a possible conflict of interest. *Id.* at 169.

¶ 19    In response, defendant cites *People v. Courtney*, 288 Ill. App. 3d 1025, 1030 (1997), as a case more factually similar to the present case than *Kester*, as it involves a conflicted state's attorney, rather than defense counsel. However, we find the court's reasoning in *Courtney* provides less guidance than *Kester*, given that *Courtney* did not involve an affirmative waiver, such as a guilty plea, but rather a failure to object at trial (*Courtney*, 288 Ill. App. 3d at 1031), which, as explained below (*infra* ¶ 19) is more akin to forfeiture. Additionally, in *Courtney*, the defendant had raised the issue in a posttrial motion. *Courtney*, 288 Ill. App. 3d at 1031. Even though the supreme court found no knowing waiver resulting from the defendant's guilty plea in *Kester*, we agree with the State that the court's reasoning provides more guidance in addressing the issue of waiver in the present case. We further agree with the State that the circumstances present in

9

*Kester*, upon which the supreme court found no waiver, are not present here. In resolving the issue of waiver, we find it useful to start by correctly defining the term.

¶ 20　The Illinois Supreme Court has observed that Illinois law has tended to use the terms "waiver" and forfeiture" interchangeably. *People v. Morgan*, 385 Ill. App. 3d 771, 776 (2008) (citing *People v. Blair*, 215 Ill. 2d 427, 443 (2005)). "The *Blair* court, however, pointed out important distinctions between these two terms, when used correctly. 'Waiver' means the voluntary relinquishment of a known right. [Citation.]" *Id.* " 'Forfeiture' is defined as the failure to raise an issue in a timely manner, thereby barring its consideration on appeal. [Citation.]" *Id.* Moreover, "[i]n Illinois, it is settled that a constitutional right, like any other right of an accused, may be waived, and a voluntary plea of guilty waives all errors or irregularities that are not jurisdictional." (Internal quotation marks omitted.) *People v. Peoples*, 155 Ill. 2d 422, 491 (1993).

¶ 21　Unlike *Kester*, where there was never any disclosure of defense counsel's previous connection with the defendant's particular case prior to the plea (*Kester*, 66 Ill. 2d at 169), here, at the first court setting after Featherstun took office as the state's attorney, ASA Rice brought to the circuit court's attention that Featherstun had been originally appointed to represent the defendant. A contested hearing was subsequently held on January 19, 2017, in which the underlying facts were largely undisputed. ASA Rice argued that no conflict of interest existed because Featherstun's representation of defendant "was completely superficial," with no substantive interaction, and only existed as a "docket entry made." APD Quinn also agreed that Featherstun had virtually no involvement in representing defendant, other than to introduce defendant to APD Quinn,

10

and Featherstun performed no supervisory acts involving defendant's case. APD Quinn explained that his continuing objection was over concern that "the appearances" of a potential conflict of interest involving the state's attorney's office were clouding the ultimate finality of this case. Following the parties' arguments, the court ruled that no conflict of interest existed.

¶ 22 Given that the circuit court conducted a contested hearing to determine whether to appoint a special prosecutor, after the potential conflict issue was initially raised by ASA Rice, defendant cannot now reasonably argue that he had no knowledge of the facts giving rise to the potential conflict. Taking into consideration Featherstun's nominal involvement in defendant's initial representation, where Featherstun filed no entry of appearance or discovery motion, made no court appearances, and held no privileged communication or information in confidence, it is reasonable to assume that defendant voluntarily, and perhaps strategically, abandoned his bid for a special prosecutor to enter into a favorable plea agreement. Thus, unlike *Kester*, where the record demonstrated that the defendant was unaware of the conflict at the time of his guilty plea, here, defendant was perfectly aware of the potential conflict, and yet *knowingly* relinquished his challenge to the circuit court's ruling by entering a guilty plea. We, therefore, find that defendant is bound by his knowing waiver.

¶ 23 However, in his reply brief, defendant asserts that we should alternatively consider "Featherstun's conflict of interest" under the second prong of the plain error rule. In support, defendant argues that he could not have raised the error in his posttrial motion, which was a limited request for the circuit court to reconsider defendant's sentence,

11

because Featherstun had not yet appeared to argue the motion for the State. We disagree, and for reasons stated below, we decline to review this issue for plain error.

¶ 24 Under the plain-error doctrine, a reviewing court may consider an unpreserved and otherwise forfeited error "(1) where the evidence in the case is so closely balanced that the jury's guilty verdict may have resulted from the error and not the evidence[ ] or (2) where the error is so serious that the defendant was denied a substantial right[ ] and thus a fair trial." *People v. McLaurin*, 235 Ill. 2d 478, 489 (2009). Our supreme court has "emphasized that the term 'waiver,' as used in cases regarding [Illinois] Supreme Court Rule 615(a) [citation] concerning plain error, has nothing to do with the voluntary relinquishment of known rights." *Morgan*, 385 Ill. App. 3d at 776 (citing *People v. Townsell*, 209 Ill. 2d 543, 547-48 (2004)). "[T]he term 'waiver,' as applied to Rule 615(a), concerns failure to bring an issue to the attention of the trial court." *Id.* In the context of plain error, the term "waiver" actually means "forfeiture." *Id.*

¶ 25 We find defendant's argument for plain error review unpersuasive because he knowingly waived, rather than forfeited, the claimed error. It has been explained that

"a guilty plea represents a break in the chain of events which has *preceded* it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred *prior* to the entry of the guilty plea." (Emphases added.) *Tollett v. Henderson*, 411 U.S. 258, 267 (1973).

12

Because defendant pleaded guilty, any nonjurisdictional errors that occurred *prior* to that date were waived. See *Townsell*, 209 Ill. 2d at 545 (a voluntary guilty plea waives all nonjurisdictional errors or irregularities, including constitutional ones). Thus, we are unable to reach the merits of defendant's claim of a conflict of interest prior to the entry of his guilty plea.

¶ 26 In addition, we note defendant does not seek a rehearing on his motion to reconsider sentence based on Featherstun's *subsequent* involvement at that hearing. Instead, defendant seeks to set aside his guilty plea, conviction, and sentence. Thus, we decline to review that matter for plain error, and affirm the conviction and sentence.

¶ 27                                    III. Conclusion

¶ 28 For the foregoing reasons, we affirm defendant's conviction and sentence where the issue raised on appeal was knowingly waived by defendant in entering a guilty plea.

¶ 29 Affirmed.