NOTICE
Decision filed 02/16/18. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2018 IL App (5th) 140486

NO. 5-14-0486

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Montgomery County. |
| | ) | |
| v. | ) | No. 12-CF-7 |
| | ) | |
| SHANNON D. JOHNSON, | ) | Honorable |
| | ) | Kelly D. Long, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE CHAPMAN delivered the judgment of the court, with opinion.
Justices Moore and Overstreet concurred in the judgment and opinion.

**OPINION**

¶ 1 The defendant, Shannon D. Johnson, pled guilty to one count of aggravated participation in methamphetamine manufacturing (720 ILCS 646/15(b)(1)(B) (West 2010)). He subsequently filed a *pro se* petition for relief from judgment. The court appointed a public defender to represent him. The public defender filed a motion to withdraw, arguing that there were no meritorious arguments for him to present. Six days before counsel's motion came for a hearing, the defendant filed a *pro se* postconviction petition. At a hearing on counsel's motion, the court allowed counsel to withdraw and appointed a new public defender to represent the defendant. The new public defender subsequently filed a motion to withdraw, asserting that she likewise found no meritorious arguments to present. The court granted the motion after a hearing and subsequently granted the State's motion to dismiss. The defendant appeals, arguing that the

1

court's ruling deprived him of his statutory right to the reasonable assistance of postconviction counsel. We reverse.

¶ 2    In January 2012, police obtained a warrant to search the defendant's property. The warrant was supported by a tip from a confidential informant as well as police surveillance of the property. The informant told police that he had observed the defendant manufacturing methamphetamine in a camper with a codefendant, Renee Price. The search warrant authorized the search of property located at "315 West Barry Street, Witt, Montgomery County, Illinois, described as follows: A yellow vinyl-sided single-wide trailer with a white and yellow older camper trailer on the property and a white Dodge pickup truck."

¶ 3    When officers executed the search warrant, they discovered items used in the manufacture of methamphetamine in both the trailer and the camper; they did not find any incriminating evidence in the pickup truck. On January 9, 2012, the State filed a two-count information, charging the defendant with aggravated participation in methamphetamine manufacturing (*id.*) and participation in methamphetamine manufacturing (*id*. § 15(a)(1)).

¶ 4    On August 16, 2012, the defendant filed a motion to suppress evidence and quash his arrest. He alleged that, although the camper searched by police matched the physical description of the camper identified in the search warrant, it was not located on 315 West Barry Street, the property identified in the warrant. He argued that the search therefore violated the "particularity requirement" of the fourth amendment. See *People v. Gonzalez*, 316 Ill. App. 3d 354, 360 (2000) (explaining that a search warrant "must state with particularity the place to be searched").

¶ 5    On the same day, the defendant filed a motion to disclose the identity of the confidential informant. He alleged that the informant's "credibility was at stake at the time of the issuance of the search warrant." He requested the disclosure of information about the confidential source,

2

including what, if any, incentives were offered to him to engage in controlled buys or conduct surveillance of the defendant, his criminal history, and whether any charges were pending against him at the time he provided information about the defendant to police.

¶ 6    The following day, August 17, the court held a motion hearing. Inspector Justin Gonzalez of the Southern Illinois Drug Task Force was the sole witness. He testified that the confidential informant described the camper in detail and told police that the defendant and Renee Price were cooking methamphetamine in it. Inspector Gonzalez further testified that he had been informed both that the defendant owned the camper and that he was using it to manufacture methamphetamine.

¶ 7    Defense counsel attempted to ask Inspector Gonzalez questions related to the reliability of the confidential source. However, the State objected to these questions on the basis of relevance. In response, defense counsel reminded the court that there was an issue concerning the informant's credibility. The court asked counsel where in his motion to suppress those allegations were, to which counsel replied, "It's not in my motion." The court sustained the objections.

¶ 8    Inspector Gonzalez was shown an aerial photograph taken a few days before the hearing. In the photograph, the camper appeared to be located on a property across the street from the defendant's property. Inspector Gonzalez stated that the camper was "definitely" not in that location when he executed the search warrant. He described the location of the camper in detail. He testified that the camper was parked near a fire pit, which was located between the camper and the trailer. He further testified that a cable was set up as a dog run, with one end of the cable attached to the camper and the other end attached to the trailer. Inspector Gonzalez noted that he

3

included this description in his police report. He acknowledged that he did not know the precise location of the property line.

¶ 9    After Inspector Gonzalez testified, the court indicated that the description of the camper included in the search warrant was sufficiently specific to support a valid warrant. However, the court did not rule on the defendant's motion prior to taking a recess. After the recess, the defendant withdrew his motion to suppress and waived his right to a jury trial. Defense counsel indicated that he anticipated that the defendant would plead guilty. On September 26, 2012, the defendant pled guilty pursuant to a negotiated plea agreement. In accordance with the agreement, he was sentenced to 10 years in prison, a $3000 drug assessment fee, and the forfeiture of his truck.

¶ 10    On June 18, 2013, the defendant filed a *pro se* petition for relief from judgment pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2012)). He alleged that he did not own or occupy the property where the evidence was found and that trial counsel was aware of this fact. He alleged that he provided trial counsel with the name of the person who owned the camper and the names of individuals who could testify as to the precise location of the property line, but counsel never contacted these individuals. He further alleged that when Renee Price pled guilty, she admitted that all of the methamphetamine-manufacturing items found on the property belonged to her, not the defendant. The defendant alleged that there was no evidentiary hearing to address these issues. Finally, he alleged that the truck was seized without any evidence that it had been used for illegal activity.

¶ 11    Along with his section 2-1401 petition, the defendant filed a motion for the appointment of counsel. On July 22, 2013, the State filed a motion to strike the defendant's section 2-1401 petition, arguing that (1) the petition did not allege any information that was not available to the

4

trial court during plea proceedings and (2) the petition raised "procedural issues with counsel," which were not appropriate for a section 2-1401 petition. At a July 22 hearing, the court granted the defendant's motion and appointed Public Defender David Grigsby to represent him.

¶ 12 On December 8, 2013, Grigsby filed a motion to withdraw. He argued that the defendant's petition was, in substance, a postconviction petition. Grigsby noted that during the plea proceedings, the defendant did not object to the factual basis for his plea and did not move to withdraw his plea. Moreover, when asked by the court if he was happy with the representation of plea counsel, the defendant said "Yes." Grigsby asserted that, based on his review of the record, he could find no basis to argue that the defendant's plea was the result of a substantial denial of a constitutional right, as is required under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2012)).

¶ 13 While Grigsby's motion to withdraw was pending, the defendant filed three *pro se* pleadings. On December 27, 2013, he filed a motion for leave to amend. In it, he asked the court for leave to amend, and stated, "Defendant moves this Honorable Court for Post-Conviction relief." On February 21, 2014, he filed a *pro se* postconviction petition and a *pro se* motion, requesting the appointment of a different attorney. In his postconviction petition, the defendant asserted that the trial court did not make an adequate inquiry into the factual basis for his plea, that he was "pressured" into pleading guilty because his attorney believed that was the "only possible outcome," and that he received ineffective assistance of counsel. The defendant advanced three arguments in support of his ineffective assistance claim. He argued that the camper was not on his property at the time it was searched, although the search warrant specified that the camper to be searched was located on his property. He also asserted that the confidential source was not reliable and that counsel failed to object to forfeiture of the defendant's vehicle.

5

¶ 14    The pending motions came for a hearing six days later, on February 27. At the outset, the court called attention to the defendant's motion to amend, noting that the defendant wanted "to change his petition under section [2-1401] to a postconviction petition." Grigsby offered to file an amended petition to withdraw in order to address the defendant's recently filed pleadings. The court asked the defendant what his position was, to which the defendant replied, "I filed the amended postconviction. I guess it's your decision, Your Honor." The court explained that it was asking the defendant if he wanted Grigsby to continue to represent him. The defendant responded, "No." At this point, the court granted Grigsby's motion to withdraw.

¶ 15    The court then asked the defendant if he wanted to represent himself or if he wanted another attorney appointed to represent him. The defendant stated that he wanted the court to appoint a new attorney. The court asked the state's attorney his position on the matter. The state's attorney informed the court that he had reviewed the defendant's postconviction petition. He stated, "I *** don't believe that it has any merit. I don't know if this court—has the court reviewed—I believe we would be at the first stage of a post-conviction petition because it's just now been filed." He argued that, because the defendant's *pro se* petition was at the first stage of postconviction proceedings, it was up to the court to review the petition and either "let it continue or dismiss it *sua sponte*." The court replied, "I'm not going to dismiss it on that premise." The court then appointed Public Defender Stacey Cellini Hollo to represent the defendant.

¶ 16    On May 16, 2014, Hollo filed a motion to withdraw. She noted that the record was "void of any indication as to whether or not the court found the amended pleadings set forth the gist of a meritorious claim prior to appointing counsel." Hollo certified that she consulted with the defendant; reviewed the entire court file, including the transcripts of the proceedings; examined

6

the discovery tendered to the defendant by the State; and interviewed Inspector Gonzalez, Witt Police Chief Scott Woods, and the two attorneys involved in the plea proceedings. She asserted that, based upon her investigation, she could "find no basis on which to present any meritorious issue for review."

¶ 17    In a supporting memorandum, Hollo explained that after consulting with the defendant, she determined that he wanted her to raise four claims, each of which she found to be without merit. The first of these claims was a contention that trial counsel was ineffective for failing to undertake an independent investigation about the ownership of the camper and the location of the property line. Hollo believed that this claim lacked merit because trial counsel told her that he did look into the defendant's claims, Chief Woods told her that the basis for seeking the search warrant was that the defendant held the camper out as being his own, and these statements were supported by the hearing transcripts. The next issue the defendant wanted Hollo to present was a claim that his guilty plea was not voluntary; however, she found that this claim was refuted by the transcript of the plea hearing. The third claim the defendant wanted Hollo to present was an argument that trial counsel was ineffective for failing to review discovery documents with him. Hollo found this claim to be without merit because trial counsel denied it and the defendant never voiced this concern during the plea proceedings. Finally, the defendant wanted Hollo to present his contention that trial counsel was ineffective for failing to present motions; however, Hollo found that this claim, too, lacked merit because it was refuted by the record.

¶ 18    On July 23, 1014, the defendant sent a letter to the court. In it, he asked that the court deny Hollo's motion to withdraw. Alternatively, he asked that the court appoint a new attorney to represent him if it did allow Hollo to withdraw. He asserted that he believed that his case had

7

merit, and he noted that his claim concerning ownership of the camper was at the heart of his case.

¶ 19 On August 16, 2014, the court held a hearing on Hollo's motion to withdraw. The court asked both the state's attorney and the defendant if they had any objections. The state's attorney replied, "No, sir." The defendant replied, "Just I believe my case had merit, Your Honor." The court responded, "No, we are not on that part now." The court explained that counsel "has a professional opinion" that the petition lacks merit and "doesn't feel that she can ethically amend [the] petition to say what you want her to say *** so she wants to withdraw." The defendant then stated, "If she wants to withdraw, I have no reason to—." At this point, the court interrupted the defendant and granted Hollo's motion to withdraw.

¶ 20 The court informed the defendant that if he requested the appointment of a third attorney to represent him, the court would deny that request. The court explained that the right to counsel in postconviction proceedings is statutory rather than constitutional and that two attorneys had already found the defendant's claims to be without merit. The defendant asked to proceed that day with a hearing on his petition, noting that if the court dismissed his petition, this would allow him to "just send it to the appeals" court. The court denied that request, explaining that it could not rule until the State had an opportunity to file a response to his petition. The State subsequently filed a motion to dismiss the defendant's petition, which the court granted. This appeal followed.

¶ 21 Before addressing the parties' arguments, we believe that an overview of the relevant law would be helpful. The Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2012)) provides a mechanism by which a criminal defendant may challenge his conviction on the basis of a substantial denial of his constitutional rights. *People v. Nelson*, 2016 IL App (4th) 140168,

8

¶ 14. Postconviction proceedings involve three stages, the first two of which are at issue in this appeal. At the first stage of postconviction proceedings, the court reviews the petition to determine whether it is frivolous and patently without merit. The court conducts this review without input from the State. *People v. York*, 2016 IL App (5th) 130579, ¶ 15. To survive first-stage dismissal and advance to the second stage, a petition need only set forth the gist of a constitutional claim. *Id.* If the court finds that the petition does not meet this standard, it will summarily dismiss the petition. *People v. Thomas*, 2013 IL App (2d) 120646, ¶ 5.

¶ 22    If the court does not dismiss the petition at the first stage, it must docket the matter for second-stage proceedings. If the defendant is indigent, the court must appoint an attorney to represent him. *York*, 2016 IL App (5th) 130579, ¶ 15. At this stage, counsel may file an amended petition for the defendant, and the State may respond by filing either a motion to dismiss or an answer. *Id.* ¶ 16. The petition will survive a motion to dismiss and advance to the third stage if the defendant has made a " 'substantial showing of a constitutional violation.' " *Id.* (quoting *People v. Little*, 2012 IL App (5th) 100547, ¶ 12). The third stage generally involves an evidentiary hearing on the defendant's claims. *Id.*

¶ 23    Two features of the Post-Conviction Hearing Act are particularly pertinent to the questions before us in this appeal. First, the postconviction court must conduct its first-stage review within 90 days after the petition is filed. After 90 days, the court may not summarily dismiss the petition. *Thomas*, 2013 IL App (2d) 120646, ¶ 5. Thus, the petition must be advanced to the second stage of postconviction proceedings if the court has not reviewed the petition within that time. *Id.* As a result, some postconviction petitions will inevitably advance to the second stage even though they are frivolous and patently without merit. See *People v. Greer*, 212 Ill. 2d 192, 204 (2004).

¶ 24    The second important feature of the Post-Conviction Hearing Act is that it provides a right to counsel. Because the source of the right to postconviction counsel is statutory rather than constitutional, both the duration of the right and the level of assistance guaranteed are limited to what is mandated under the act. *Id.* at 203-04. The right to postconviction counsel thus differs from the right to counsel at trial or on a direct appeal in two ways. First, the right to counsel attaches only once the petition has advanced to the second stage. *Id.* at 203 (citing 725 ILCS 5/122-2.1, 122-4 (West 2000)). Second, the level of assistance guaranteed is a reasonable level of assistance. *Id.* at 204.

¶ 25    Providing reasonable assistance requires postconviction counsel to perform certain duties outlined in Illinois Supreme Court Rule 651(c) (eff. Feb. 6, 2013). That rule requires postconviction counsel to consult with the defendant to determine the issues the defendant wants raised, to examine the record of the trial or plea proceedings, and to make any amendments to the petition " 'that are necessary for an adequate presentation of [defendant's] contentions.' " *Greer*, 212 Ill. 2d at 205 (quoting Ill. S. Ct. R. 651(c) (eff. Dec. 1, 1984)). However, an attorney is not required to amend the petition to present claims that are frivolous; indeed, an attorney may not ethically advance arguments she knows to be meritless. *Id.* at 205-06. This presents a dilemma when a petition that is in fact frivolous and patently without merit has advanced to the second stage because the court failed to consider it within 90 days. See *id.* at 206-07. As we will discuss later, counsel may face a similar dilemma if a petition is advanced to the second stage because it appears meritorious on its face, but turns out to be frivolous. Our supreme court addressed postconviction counsel's obligations under these circumstances in *Greer* and *People v. Kuehner*, 2015 IL 117695.

¶ 26    In *Greer*, the defendant's *pro se* petition did not come to the attention of the trial court for seven months after it was filed. *Greer*, 212 Ill. 2d at 194-95. The delay occurred because the judge who presided at the defendant's trial had since retired, and the clerk of the court failed to bring the petition to the attention of the judge assigned to consider it. *Id.* at 200. Because the petition had not been summarily dismissed within 90 days, the court docketed the matter for second-stage proceedings and appointed counsel to represent the defendant. *Id.* at 195. Appointed counsel later filed a motion to withdraw, asserting that he could find no meritorious issues to present for review. The postconviction court granted the attorney's motion to withdraw and dismissed the defendant's petition *sua sponte*. *Id.*

¶ 27    On appeal, the Fourth District held that postconviction counsel may be allowed to withdraw if he can demonstrate to the court that there are no meritorious claims to present on behalf of the defendant. However, the Fourth District also held that the postconviction court erred by dismissing the petition *sua sponte* because its authority to do so expired 90 days after the petition was filed. *Id.*

¶ 28    The defendant appealed to the supreme court, arguing that the postconviction court was not authorized to allow counsel to withdraw under the Post-Conviction Hearing Act. He argued that by allowing counsel to withdraw, the court deprived the defendant of his statutory right to the assistance of counsel. *Id.* at 195-96. The crux of this argument was that because the Post-Conviction Hearing Act does not contain any provisions expressly allowing counsel to withdraw, it must be construed as prohibiting counsel from withdrawing. *Id.* at 207. The supreme court explained, however, that "[l]egislative 'silence is not an unmistakable implication.' " *Id.* (quoting *Armstrong v. Resolution Trust Corp.*, 157 Ill. 2d 49, 60 (1993)).

¶ 29    In rejecting the defendant's interpretation, the supreme court repeatedly emphasized that the petition in that case had been advanced to the second stage without the postconviction court determining that it set forth the gist of a constitutional claim. *Id.* at 200, 202; see also *Kuehner*, 2015 IL 117695, ¶ 19 (emphasizing that the *Greer* court "noted over and over again [that] the *** petition in that case arrived at the second stage not because the trial court made an affirmative finding as to its merit but rather only because the trial court failed to make *any* assessment of its merit in the prescribed statutory period" (emphasis in original)). The court explained that under such circumstances, appointed counsel "may well find that he or she represents a client attempting to advance arguments that are patently without merit or wholly frivolous, a client whose petition would have been summarily dismissed had the circuit court timely considered the merits of the petition." *Greer*, 212 Ill. 2d at 207.

¶ 30    The court noted that, as we have discussed, counsel is not required to "advance frivolous or spurious claims on [a] defendant's behalf." *Id.* at 205. The court emphasized that counsel may not ethically present claims counsel knows to be frivolous. *Id.* at 206, 209. The court recognized the dilemma that would be posed if postconviction counsel were not permitted to withdraw upon finding that a defendant's claims are frivolous. *Id.* at 206 (asking, "What is defense counsel to do after he or she determines that defendant's petition is frivolous? Is counsel to stand mute at all subsequent proceedings?").

¶ 31    The court also pointed out that appellate attorneys are allowed to withdraw as counsel if they find no meritorious claims to present on behalf of their clients even though "the level of assistance required [on a direct appeal] is of a higher magnitude and [is] of constitutional dimension." *Id.* at 209 (citing *People v. Owens*, 139 Ill. 2d 351, 364-65 (1990)). The court thus concluded that "the legislature did not intend to require appointed counsel to continue

12

representation of a postconviction defendant after counsel determines that defendant's petition is frivolous and patently without merit." *Id.*

¶ 32    The *Greer* court went on to consider whether counsel's motion to withdraw was properly granted under the facts before it. The court explained that each of the claims in the defendant's petition were "clearly refute[d]" by the record in the plea proceedings. *Id.* at 210-11. The court therefore agreed with counsel's determination that the defendant's claims were frivolous and patently without merit. *Id.* at 210. The court also noted that it appeared from the record that counsel had complied with the requirements of Rule 651(c). *Id.* at 212. The court concluded that, under these circumstances, counsel was properly allowed to withdraw. *Id.*

¶ 33    The *Greer* court provided little guidance for how this holding should apply in other cases. See *Kuehner*, 2015 IL 117695, ¶ 16 (acknowledging that its *Greer* holding led to confusion). The court emphasized in *Greer* that "an attorney moving to withdraw should make some effort to explain *why* defendant's claims are frivolous or patently without merit." (Emphasis in original.) *Greer*, 212 Ill. 2d at 212. Counsel in *Greer* did not do this. Instead, he explained why he was unable to " 'properly substantiate' " each claim. *Id.* at 195. The supreme court emphasized that this was not the appropriate standard (*id.* at 211-12) and stated that the "procedure in the circuit court [left] something to be desired" (*id.* at 212). The court nevertheless upheld the decision to grant counsel's motion to withdraw because it appeared that counsel had complied with Rule 651 and the defendant's claims were refuted by the record.

¶ 34    In *Kuehner*, the supreme court acknowledged that its conclusion in *Greer* "generated some measure of confusion" and led to a split of authority within the appellate court. *Kuehner*, 2015 IL 117695, ¶ 16. The court noted that some panels of the appellate court have interpreted *Greer* as allowing counsel to withdraw as long as the record shows both that counsel complied

13

with Rule 651(c) and that the defendant's claims are in fact frivolous. *Id.* (citing *People v. Kuehner*, 2014 IL App (4th) 120901, ¶¶ 66, 71). Other panels have read *Greer* to require counsel to provide at least some explanation as to why counsel believes each of the defendant's claims is frivolous and patently without merit. *Id.* (citing *People v. Komes*, 2011 IL App (2d) 100014, ¶¶ 28-29). (We note that this court has not decided this question.) The *Kuehner* court did not resolve this question, however, because it found *Greer* distinguishable. *Id.* ¶ 18.

¶ 35 The difference, the court explained, is that in *Kuehner*, unlike in *Greer*, the trial court explicitly found that the defendant's *pro se* petition was not frivolous or patently without merit. *Id.* ¶ 8. The supreme court found that because of this, "the burdens and obligations of appointed counsel" in *Kuehner* were "decidedly higher than those that were present in *Greer*." *Id.* ¶ 18. This was so, the court explained, because once a postconviction court has "made an affirmative determination that, on its face, the petition [is] neither frivolous nor patently without merit," counsel may not simply "second guess" the court's determination. *Id.* ¶ 20. Rather, counsel's role is to clean up the defendant's contentions so that they may be presented to the court as effectively as possible. *Id.*

¶ 36 The court acknowledged, however, that in some cases, appointed counsel might "discover[ ] something that ethically would prohibit counsel from *** presenting the defendant's claims to the court" in spite of the court's initial determination that the petition was not frivolous or patently without merit on its face. *Id.* ¶ 21. The supreme court explained that in such cases, counsel may not seek to withdraw merely by asserting that the petition was frivolous and patently without merit. Instead, the court held, "counsel bears the burden of demonstrating, with respect to each of the defendant's *pro se* claims, why the trial court's initial assessment was incorrect." *Id.*

¶ 37 The supreme court likened a motion to withdraw under these circumstances to a motion to reconsider. *Id.* A motion to reconsider brings to the court's attention changes in law, factual matters that were not known to the court at the time it ruled, or errors of law the court made in its initial ruling. Similarly, "a motion to withdraw filed subsequent to a trial court's affirmative decision to advance the petition to the second stage *** seeks to bring to the trial court's attention information that was not apparent on the face of the *pro se* petition" when the court made its initial determination. *Id.*

¶ 38 We note that in *Kuehner*, the court focused on the obligations of appointed counsel in filing a motion to withdraw after the court has found the petition adequate to survive first-stage dismissal. See *id.* ¶¶ 18, 20-22. However, we believe that implicit in its holding is a requirement that the postconviction court must actually determine that the petition is frivolous and patently without merit before allowing counsel to withdraw. As we discussed earlier, the court analogized such a motion to a motion to reconsider. *Id.* ¶ 21. The purpose of a motion to reconsider is, of course, to persuade the court that its initial ruling should be overturned. Similarly, the *Kuehner* court held that "counsel bears the burden of *demonstrating*" to the court that its initial determination on the merits was wrong. (Emphasis added.) *Id.* In addition, the court noted that "it is not asking too much to have counsel simply reduce his or her findings to writing and to include them in the motion to withdraw so that both the trial court and the reviewing courts have a basis for evaluating counsel's conclusion." *Id.* ¶ 22. With these principles in mind, we turn our attention to the questions involved in the matter before us.

¶ 39 Resolution of this case requires us to answer three questions. First, did the postconviction court advance the defendant's petition to the second stage because it found that the petition adequately stated the gist of a constitutional claim or because it failed to act on the petition

within the applicable 90-day period? In other words, does *Kuehner* apply or does *Greer* apply? Second, if *Kuehner* applies, did Hollo's motion to withdraw comply with its requirements? And third, if Hollo's motion was adequate under *Kuehner*, did the court actually evaluate her conclusions and determine that the petition was frivolous and patently without merit before allowing her to withdraw and requiring the defendant to proceed *pro se*?

¶ 40     We first address the parties' arguments concerning the reasons the court advanced the defendant's petition to the second stage. We note that this case is markedly different from both *Greer* and *Kuehner* in this regard. In *Greer*, the postconviction court stated on the record that the petition was advanced to the second stage only because the court did not review it within 90 days. *Greer*, 212 Ill. 2d at 200. In *Kuehner*, the postconviction court made an express finding that the petition was not frivolous or patently without merit. *Kuehner*, 2015 IL 117695, ¶ 8. Here, the court made no such express statements.

¶ 41     The defendant argues that although the court never expressly ruled that his petition was not frivolous or patently without merit, it "did so by implication" when it appointed counsel within 90 days. This is so, he contends, because the Post-Conviction Hearing Act only provides a right to counsel once the court either makes that determination or fails to rule within 90 days. At oral argument he explained, "There is no third option." As such, the defendant contends, counsel was required to comply with the standards of *Kuehner* before the court could grant her motion to withdraw. The State, by contrast, argues that there is no indication that the postconviction court found that the defendant's petition stated the gist of a constitutional claim. The State asserts that it is possible for a postconviction court to affirmatively advance a petition to the second stage without finding that it has merit.

16

¶ 42    We agree with the defendant that we may presume that the court found that his petition was not frivolous or patently without merit, although we reach this conclusion for reasons that are different from those he advances. In most cases, if a court appoints counsel and dockets the matter for further proceedings within 90 days, we can safely infer that the court did in fact find that the petition stated the gist of a constitutional claim even without an express statement to that effect. In light of the unusual procedural history of this case, however, it is unclear from the record whether the court did in fact make this determination. For the reasons that follow, we believe it is appropriate to resolve this question in favor of the defendant and presume that the court made this determination.

¶ 43    Much of the confusion stems from the fact that the defendant initially filed a section 2-1401 petition containing claims that attorneys on both sides recognized were more appropriately addressed in a postconviction petition. This was called to the court's attention early on. At a July 22, 2013, pretrial hearing, the court asked the state's attorney if he objected to the appointment of counsel for the defendant. The state's attorney replied, "I believe he's filed a petition that would appear to be ineffective assistance of counsel. That should not be under [section] 2-1401." The prosecutor argued that the section 2-1401 petition should be stricken for this reason, and he objected to the appointment of counsel on this basis. He noted, however, that the defendant should be allowed to amend his petition and that he would then be eligible for counsel with the "appropriate motions on file."

¶ 44    A circuit court has the authority to treat a section 2-1401 petition as a postconviction petition if it raises claims that are cognizable under the Post-Conviction Hearing Act. See *People v. Shellstrom*, 216 Ill. 2d 45, 51 (2005). There are often good reasons to do so. *Id.* at 52. One reason to treat a section 2-1401 petition as a postconviction petition is to allow the *pro se*

17

defendant's claims to be presented in the proper procedural vehicle. As the prosecutor argued early on in this case, a section 2-1401 petition is not an appropriate avenue for asserting claims of ineffective assistance of counsel. See *People v. Pinkonsly*, 207 Ill. 2d 555, 567 (2003). In addition, there is no right to the assistance of counsel under section 2-1401 as there is under the Post-Conviction Hearing Act, although courts do have the discretion to appoint counsel in section 2-1401 proceedings. *People v. Kane*, 2013 IL App (2d) 110594, ¶ 21.

¶ 45 The court in this case did not expressly state that it would treat the defendant's petition as a postconviction petition. However, the court also did not grant the State's motion to strike the petition; it appointed Grigsby to represent the defendant, knowing that in order to present the defendant's claims, Grigsby would need to bring them under the Post-Conviction Hearing Act. By appointing counsel under these circumstances, the court took affirmative steps that in effect advanced the petition to the second stage of postconviction proceedings.

¶ 46 On September 9, 2013, Grigsby appeared in court with the defendant for the first time. Grigsby stated, "I think this is going to be a post-conviction petition, Judge." He explained that he needed time to review the "considerable paperwork" sent to him by the defendant before he could amend the petition. He therefore asked that the matter be set for further pretrial proceedings. As discussed previously, Grigsby filed his motion to withdraw in December 2013. Shortly thereafter, the defendant filed a petition to amend, expressly invoking the Post-Conviction Hearing Act.

¶ 47 Considering this history, it is possible that the reason the court appointed Grigsby to represent the defendant on July 22, 2013—within 90 days after the defendant filed his *pro se* petition—was that the court found that (1) it would be appropriate to treat the petition as a postconviction petition and (2) the petition stated the gist of a constitutional claim. It is also

possible, however, that the court did not recharacterize the defendant's petition until the hearing on Grigsby's motion to withdraw. As noted, the court stated at that hearing that the defendant wanted to convert his section 2-1401 petition into a postconviction petition. If that is the case, the court may have decided to advance his newly-recharacterized petition to the second stage by appointing Hollo because, by this point, several months had elapsed since the defendant filed his original petition. We also note that at that same hearing, the prosecutor argued that the court should treat the *pro se* petition filed just before the hearing as a first-stage petition. The court did not give its reason for declining to do so. It is possible the court found that the second *pro se* petition stated the gist of a viable constitutional claim.

¶ 48 Although it is impossible to discern on this record whether the court did, in fact, review the petition and find that it stated the gist of a constitutional claim, as stated previously, we believe the defendant must be given the benefit of this doubt and the higher standard of *Kuehner* should apply. We reach this conclusion for three reasons.

¶ 49 First, the procedures followed by the court throughout the proceedings below are consistent with this presumption. Unlike what happened in *Greer*, the defendant's petition in this case came to the attention of the court immediately. The court held a status hearing on the petition the day after it was filed. The court was aware that the allegations in the petition were cognizable under the Post-Conviction Hearing Act at least as early as the July 22, 2013, hearing at which the state's attorney raised this point—only 34 days after the petition was filed. The defendant was present at that hearing. The court could have told him that it intended to recharacterize the petition as a postconviction petition in order to avoid granting the State's motion to strike on the grounds that the petition raised claims that were not cognizable in section 2-1401 proceedings. Had the court done so, it then would have had more than seven weeks to

19

conduct its first-stage postconviction review. The court also could have granted the State's motion to strike. Instead, the court appointed counsel. As stated earlier, it should have been clear to the court at this time that appointed counsel would need to file a postconviction petition on the defendant's behalf in order to present his claims to the court. This is consistent with an affirmative decision to advance the petition to the second stage, which implies a finding that the petition was not frivolous or patently without merit.

¶ 50 Second, the supreme court's rationale for imposing less exacting obligations on attorneys in circumstances similar to those involved in *Greer* does not apply to this case. In *Kuehner*, the court explained that the lower standard was warranted in *Greer* because "appointed counsel was the *very first person* to lay eyes on and assess the *pro se* petition." (Emphasis in original.) *Kuehner*, 2015 IL 117695, ¶ 19. In the instant case, that is not true.

¶ 51 Third, we believe that a contrary conclusion would be at odds with the rights the Post-Conviction Hearing Act is meant to protect. As the *Kuehner* court observed, an attorney's second-stage motion to withdraw is a request to deny the defendant "the first form of relief afforded by the [Post-Conviction Hearing] Act, namely, the appointment of counsel" once a court has granted that right. *Id.* ¶ 22. We must also emphasize that at the second stage of postconviction proceedings, a petitioner must meet a higher standard to survive dismissal. As previously discussed, while a petition need only set forth the gist of a constitutional claim to survive first-stage dismissal (*York*, 2016 IL App (5th) 130579, ¶ 15), it must make a substantial showing that a constitutional violation occurred in order to survive second-stage dismissal (*Little*, 2012 IL App (5th) 100547, ¶ 12). Moreover, a second-stage petitioner must make this showing in the face of adversarial participation by the State. See *York*, 2016 IL App (5th)

20

130579, ¶ 16. Obviously, a *pro se* petitioner is at a distinct disadvantage under such circumstances.

¶ 52    We recognize that there are cases in which the situation we have described is inevitable because appointed attorneys may not ethically present claims they know to be meritless. However, we find that under the circumstances of the present case—where the trial court had the opportunity to review the petition within 90 days and where the record does not clearly show that the petition was advanced only because the court failed to do so—appointed counsel must meet the higher standard set forth in *Kuehner* before the defendant may be denied his statutory right to counsel and placed in the position of having to proceed *pro se* against the State in second-stage proceedings.

¶ 53    We next consider whether Hollo's motion to withdraw was adequate under *Kuehner*. At the outset, we hasten to point out that *Kuehner* was decided after the trial court proceedings in this matter were over. Thus, Hollo did not have the benefit of the *Kuehner* court's guidance when she prepared her motion to withdraw. As we have discussed at length, she also did not have the benefit of knowing whether the trial court had, in fact, found that the petition stated the gist of a constitutional claim. Nevertheless, as the State acknowledges, *Kuehner* is applicable to cases that were pending on appeal when it was decided, including this case. See *People v. Richey*, 2017 IL App (3d) 150321, ¶ 24 (citing *Teague v. Lane*, 489 U.S. 288 (1989), and *People v. Price*, 2016 IL 118613, ¶ 27).

¶ 54    The defendant's *pro se* postconviction petition essentially raises five claims. In it, he reiterates the arguments he raised in his section 2-1401 petition that (1) counsel was ineffective for failing to adequately investigate the ownership of the camper and the location of the property line, and (2) counsel was ineffective for failing to object to the forfeiture of his truck. In addition,

21

he asserts that (1) he was pressured to plead guilty because his attorney believed this was the "only possible outcome," (2) the court failed to make an adequate inquiry into the factual basis underlying his plea, and (3) counsel was ineffective for failing to challenge the reliability of the confidential informant. Hollo's motion addressed two of these claims—the defendant's claim concerning the ownership of the camper and his claim that his plea was not voluntary. She also addressed two additional claims the defendant apparently told her he wanted her to raise—counsel's alleged failure to review discovery documents with the defendant and counsel's alleged failure to present motions. However, she did not address the remaining three claims at all. Under *Kuehner*, this warrants reversal. See *Kuehner*, 2015 IL 117695, ¶ 23 (noting that "appointed counsel did an admirable job of explaining why she concluded that some of the claims raised in defendant's *pro se* petition lacked merit," but reversing the decision to allow her to withdraw because she did not address several other claims).

¶ 55    Finally, we believe that reversal is warranted in this case because there is no indication in the record that the court ever actually considered whether Hollo was correct in asserting that the defendant's petition lacked merit. As discussed earlier, the defendant told the court that he believed his petition had merit during the hearing on Hollo's motion, to which the court responded, "No, we are not on that part now." However, that was precisely the question the court was required to answer before allowing Hollo to withdraw. Before a court may grant an attorney's motion to withdraw and require the defendant to proceed *pro se* against a State motion to dismiss, the court must actually evaluate counsel's assertions and make its own determination that the petition is frivolous and patently without merit. Instead, the court in this case told the defendant that the merit of his petition was not at issue, asked if the defendant objected to

22

counsel's withdrawal, interrupted the defendant before he could finish answering that question, and then allowed counsel to withdraw. This is a far cry from what *Kuehner* requires.

¶ 56    For the reasons stated, we reverse the court's rulings allowing Hollo to withdraw as counsel and granting the State's motion to dismiss, and we remand for further second-stage proceedings. See *Kuehner*, 2015 IL 117695, ¶ 24. On remand, the court should appoint a new attorney to represent the defendant. See *id.* ¶ 25. If necessary, that attorney may file a motion to withdraw that meets the standards established by the supreme court in *Kuehner*, and the court may grant the motion if, after evaluating counsel's claims, the court finds that the petition is frivolous and patently without merit.


¶ 57    Reversed; cause remanded.

2018 IL App (5th) 140486

NO. 5-14-0486

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Montgomery County. |
| | ) | |
| v. | ) | No. 12-CF-7 |
| | ) | |
| SHANNON D. JOHNSON, | ) | Honorable |
| | ) | Kelly D. Long, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

**Opinion Filed:**          **February 16, 2018**

_____

**Justices:**          Honorable Melissa A. Chapman, J.

Honorable James R. Moore, J., and
Honorable David K. Overstreet, J.,
Concur

_____

**Attorneys
for
Appellant**          Michael J. Pelletier, State Appellate Defender, Ellen J. Curry, Deputy
Defender, Ian C. Barnes, Assistant Appellate Defender, Office of the State
Appellate Defender, Fifth Judicial District, 909 Water Tower Circle, Mt.
Vernon, IL 62864

_____

**Attorneys
for
Appellee**          Hon. Christopher Matoush, State's Attorney, Montgomery County Courts
Complex Building, 120 North Main Street, Hillsboro, IL 62049; Patrick
Delfino, Director, David J. Robinson, Acting Deputy Director, Chelsea E.
Kasten, Staff Attorney, Office of the State's Attorneys Appellate
Prosecutor, Fifth District Office, 730 E. Illinois Highway 15, Suite 2, P.O.
Box 2249, Mt. Vernon, IL 62864

_____