NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 200436-U

NO. 4-20-0436

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
May 17, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee | ) | Circuit Court of |
| v. | ) | Sangamon County |
| DEREK D. NOLDEN, | ) | No. 08CF979 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Raylene Grischow, |
| | ) | Judge Presiding. |

JUSTICE STEIGMANN delivered the judgment of the court.
Justices Cavanagh and Harris concurred in the judgment.

**ORDER**

¶ 1 *Held:* The appellate court reversed the trial court's order, which granted the State's motion to dismiss defendant's postconviction petition, because defendant's former postconviction counsel in this case had a *per se* conflict of interest when he became the state's attorney of Sangamon County.

¶ 2 In April 2011, a jury convicted defendant, Derek D. Nolden, of being an armed habitual criminal (720 ILCS 5/24-1.7 (West 2008)), possession of a stolen firearm (*id.* § 16-16(a)), and possession of a weapon by a felon (*id.* § 24-1.1(a)). The trial court sentenced defendant to a total of 22 years in prison, and, after vacating defendant's conviction for possession of a stolen firearm, this court affirmed on direct appeal. *People v. Nolden*, 2013 IL App (4th) 110608-U, ¶ 62 (*Nolden I*).

¶ 3 In March 2014, defendant *pro se* filed a petition for postconviction relief pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2014)), and the trial

court advanced it to the second stage of proceedings, appointing Daniel Wright as postconviction counsel. In August 2014, the State filed a motion to dismiss defendant's petition, and in November 2014, Wright filed a motion to withdraw as appointed counsel. In July 2015, the trial court granted counsel's motion to withdraw and, in October 2016, granted the State's motion to dismiss. On appeal, this court reversed and remanded for further second-stage proceedings. *People v. Nolden*, 2019 IL App (4th) 160936-U, ¶¶ 33-34 (*Nolden II*).

¶ 4        While defendant's case was on appeal to this court in *Nolden II*, Wright was appointed the state's attorney of Sangamon County and, in 2020, was elected to that same position. On remand from *Nolden II*, the trial court appointed new counsel, Jason Young, who subsequently filed a motion to withdraw. In July 2020, the trial court granted Young's motion to withdraw and, at the State's request, dismissed the petition.

¶ 5        Defendant appeals, arguing that the dismissal of defendant's postconviction petition must be reversed because the State was operating under a *per se* conflict of interest when the state's attorney was defendant's former postconviction counsel in the same case. We agree, reverse the trial court's order dismissing the petition, and remand for further proceedings with a special prosecutor.

¶ 6                                    I. BACKGROUND

¶ 7                          A. The Conviction and Direct Appeal

¶ 8        In April 2011, a jury convicted defendant, Derek D. Nolden, of being an armed habitual criminal (720 ILCS 5/24-1.7 (West 2008)), possession of a stolen firearm (*id.* § 16-16(a)), and possession of a weapon by a felon (*id.* § 24-1.1(a)). The trial court sentenced defendant to 22 years in prison on the armed-habitual-criminal conviction, two terms of 7 years each on the other convictions, and ordered those sentences to run concurrently. On direct appeal,

this court reversed defendant's conviction for possession of a stolen firearm because it violated the one-act, one-crime doctrine but affirmed his other convictions and sentences. *Nolden I*, 2013 IL App (4th) 110608-U, ¶ 62.

¶ 9               B. The Initial Proceedings on Defendant's Postconviction Petition

¶ 10               1. *The Postconviction Petition and The State's Motion To Dismiss*

¶ 11          In March 2014, defendant *pro se* filed a postconviction petition and several amended petitions in which he alleged, among other things, that his trial counsel was ineffective for failing to investigate three witnesses—(1) Michael Lightfoot, (2) Ashanti Beyah, and (3) Kesheena Nolden—who would have supported defendant's claim at trial that he did not own the guns that were the basis for the charges.

¶ 12          In May 2014, at a hearing, the State indicated it believed the case should proceed to the second stage and counsel should be appointed. The trial court agreed and appointed Daniel Wright as postconviction counsel.

¶ 13          In August 2014, the State filed a motion to dismiss the petition.

¶ 14               2. *Wright's Motion To Withdraw as Counsel*

¶ 15          In November 2014, Wright filed a motion to withdraw as counsel, in which he thoroughly explained why defendant's claims were meritless. However, Wright failed to address the claim in one of defendant's amended petitions that trial counsel did not investigate Beyah and Nolden. Wright also filed an Illinois Supreme Court Rule 651(c) (eff. Feb. 6, 2013) certificate in which he averred that he "consulted with [defendant] by telephone and by mail to ascertain his contentions of deprivation of constitutional rights for the purposes of presenting said alleged wrongs within these post-conviction proceedings. [Defendant] has always appeared to be articulate in his position on these issues, and cognizant of the various matters relevant to his

contentions."

¶ 16    3. *The Trial Court's Rulings and Subsequent Appeal*

¶ 17    In July 2015, the trial court conducted a hearing on Wright's motion to withdraw. Wright explained that the case had been continued several times so that defendant could gather evidence to support his claims. Wright stated that he had spoken with Lightfoot, who was now incarcerated, and attempted to get an affidavit from him but had been unsuccessful. The trial court granted the motion over defendant's objection. The court did not explain its reasoning.

¶ 18    Subsequently, Wright submitted an affidavit for fees, which detailed the 51 hours he spent working on defendant's case, including (1) communicating with defendant's trial counsel, (2) reviewing the record and trial transcripts, and (3) communicating with Lightfoot.

¶ 19    In October 2016, the trial court conducted a hearing on the State's motion to dismiss. The State adopted the arguments set forth in Wright's motion to withdraw and argued that defendant's claims were either unsupported or affirmatively rebutted by case law and the record. The court agreed and granted the State's motion to dismiss.

¶ 20    On appeal, this court agreed with defendant that Wright, despite his laudable efforts, failed to comply with the high bar set by the Illinois Supreme Court in *People v. Kuehner*, 2015 IL 117695, 32 N.E.3d 655, because Wright did not address two of the witnesses trial counsel allegedly failed to investigate. *Nolden II*, 2019 IL App (4th) 160936-U, ¶ 33. (We note *Kuehner* was decided after the trial court granted Wright's motion to withdraw.) Accordingly, we reversed and remanded the case for further second-stage proceedings. *Id.* ¶ 34.

¶ 21    C. Proceedings on Remand

¶ 22    In 2016, while defendant's postconviction claim was on appeal, Wright became an assistant state's attorney in the Sangamon County State's Attorney's Office. In 2018, Wright

was appointed state's attorney, and in 2020, he was elected to that same position.

¶ 23    In May 2019, the trial court appointed new postconviction counsel for defendant. In June 2019, "[d]ue to a conflict that has been brought to the [trial] court's attention," the court struck its appointment of defendant's initial postconviction counsel and appointed Jason Young instead.

¶ 24    In July 2019, the State filed a document titled "Responsive Pleading," in which it noted that (1) it had filed a motion to dismiss in 2014 and (2) Young had not yet filed a *Kuehner* motion or an amended postconviction petition.

¶ 25                1. *Young's Motion To Withdraw*

¶ 26    In March 2020, Young filed a motion to withdraw as postconviction counsel, asserting he had (1) consulted with defendant, (2) investigated defendant's claims—including trial counsel's failure to investigate witnesses, and (3) concluded no meritorious constitutional claims existed. Young's motion adopted and incorporated by reference Wright's 2014 motion to withdraw.

¶ 27    Regarding the failure to investigate witnesses, Young asserted that defendant could only name one witness, Lightfoot, who should have been called and could have provided helpful testimony. For all other witnesses, if defendant could provide a name, he could not explain (1) what their testimony would be or (2) how that testimony would have been helpful at trial. Young concluded the record demonstrated trial counsel was aware of Lightfoot's involvement, explored the issue at trial, and made a strategic decision not to call Lightfoot as a witness.

¶ 28                2. *The Hearing and the Trial Court's Ruling*

¶ 29    In July 2020, the trial court conducted a hearing on Young's motion to withdraw.

Young argued that Wright had previously (and correctly) explained why the claims in defendant's postconviction petitions on file with the court were not meritorious. Young also addressed the two witnesses mentioned in the prior appeal by stating defendant could not say what those witnesses would testify to.

¶ 30　　　　The State argued that it agreed with Young and the motion to withdraw because the claims raised by defendant were meritless. The following exchange then occurred:

"[DEFENDANT]: And actually, I wanted to say something. Daniel Wright, he actually contacted this witness, *** Michael Lightfoot, actually talked to him on the phone. The head State's Attorney talked to him on the phone, and [Lightfoot] actually admitted to him, saying that I had nothing to do with these weapons, and I took probation for these weapons.

And he was, actually sent a statement to [Lightfoot], which he actually got out of jail at the time, and that is why he couldn't get a signature at the time. But it still—Daniel Wright, the head State's Attorney, was my attorney at that time, actually talked to this guy on the phone.

THE COURT: Do you have any information in your file about that, Mr. Mosher?

MR. MOSHER [(ASSISTANT STATE'S ATTORNEY)]: No, Your Honor, I have no information about any such phone call.

[DEFENDANT]: He [(Wright)] was the attorney for this case at the time.

MR. YOUNG [(DEFENSE ATTORNEY)]: I don't remember where it was in the file, Your Honor, but it did indicate that Mr. Wright had contacted Mr. Lightfoot, and then it said that he had drafted an affidavit based on what

[defendant] had told him and sent it to Mr. Lightfoot, but Mr. Lightfoot never returned the affidavit, and he could no longer, he couldn't contact him any further.

THE COURT: Okay. Thank you. So am I hearing you correctly that two attorneys had drafted affidavits for Mr. Lightfoot to sign, and both times he had not signed them, or was it only Mr. Wright?

MR. YOUNG: It was only Mr. Wright.

THE COURT: Okay. Thank you."

¶ 31      After hearing the arguments of the parties, the trial court granted Young's motion to withdraw.

¶ 32      The trial court asked the State if it had a responsive pleading on file. The State said that it did and that pleading incorporated the State's 2014 motion to dismiss defendant's postconviction petition, which the State considered to be still pending. The State then argued that, as the parties and the court had just discussed at the hearing, defendant had multiple opportunities to gather and present additional claims and evidence in support of those claims and was unable to do so or otherwise show his claims had any merit. The State asked that defendant's petition be dismissed as a result. The court agreed and granted the State's motion to dismiss.

¶ 33      This appeal followed.

¶ 34                                    II. ANALYSIS

¶ 35      Defendant appeals, arguing that the dismissal of defendant's postconviction petition must be reversed because the State was operating under a *per se* conflict of interest when the state's attorney was defendant's former postconviction counsel in the same case. We agree, reverse the trial court's order dismissing the petition, and remand for further proceedings with a special prosecutor.

¶ 36                    A. The Applicable Law and Standard of Review

¶ 37        The Act provides a criminal defendant the means to redress substantial violations of his constitutional rights that occurred in his original trial or sentencing. *People v. Crenshaw*, 2015 IL App (4th) 131035, ¶ 23, 38 N.E.3d 1256; 725 ILCS 5/122-1 (West 2016). The Act contains a three-stage procedure for relief. *People v. Allen*, 2015 IL 113135, ¶ 21, 32 N.E.3d 615; 725 ILCS 5/122-2.1 (West 2016). At the second stage, the trial court appoints counsel who must then investigate the defendant's claims and make any amendments necessary for an adequate presentation of the defendant's contentions. Ill. S. Ct. R. 651(c) (eff. Feb. 6, 2013). The State may file a motion to dismiss the petition, and the petition advances to a third-stage evidentiary hearing only if the defendant makes a "substantial showing of a constitutional violation." (Internal quotation marks omitted.) *People v. Johnson*, 2018 IL App (5th) 140486, ¶ 22, 99 N.E.3d 1.

¶ 38        The right to counsel in postconviction proceedings is statutory rather than constitutional, and therefore a defendant is only entitled to the level of assistance guaranteed by the Act. *People v. Greer*, 212 Ill. 2d 192, 203, 817 N.E.2d 511, 518-19 (2004). Nonetheless, the statutory right to counsel includes the right to conflict free counsel. *People v. Hardin*, 217 Ill. 2d 289, 300, 840 N.E.2d 1205, 1212 (2005).

¶ 39        Regarding conflicted counsel, the Illinois Supreme Court has written the following:

> "An attorney cannot represent conflicting interests or undertake to discharge inconsistent duties. [Citations.] A defendant who fails to raise a conflict of interest issue in the trial court cannot succeed on appeal unless he demonstrates that he was actually prejudiced. [Citation.] An exception exists in the case of a

*per se* conflict of interest. When a *per se* conflict exists, prejudice is presumed; defendant is not required to demonstrate that the conflict contributed to the conviction." *People v. Miller*, 199 Ill. 2d 541, 544-45, 771 N.E.2d 386, 388 (2002).

¶ 40        The supreme court has also held that when "the court-appointed attorney who represented defendant as defense counsel later acted as the prosecutor in the same criminal case," then "such representation creates a *per se* conflict of interest." *Id.* at 546.

¶ 41        Whether an attorney has a conflict of interest is reviewed *de novo*. *Id.* at 544 (citing *People v. Carlson*, 185 Ill. 2d 546, 551 (1999)).

¶ 42                                    B. This Case

¶ 43        Defendant argues that the dismissal of his postconviction petition should be reversed because the Sangamon County State's Attorney's Office, now headed by defendant's former counsel, had a *per se* conflict of interest. Defendant points out that Wright was his postconviction counsel for over a year, communicated with defendant several times, and further communicated with defendant's trial counsel and exculpatory witnesses, going so far as to draft an affidavit for Lightfoot to sign. In 2019, when this court remanded the case back to the trial court for further proceedings, Wright was the state's attorney of Sangamon County, supervising and managing the entire office, which was then attempting to dismiss defendant's postconviction petition. Thus, Wright (1) had significant involvement with defendant's petition, (2) had involvement in the case spanning the entire postconviction proceedings, and (3) was now the top prosecutor in charge of all prosecutions on behalf of the State. As a result, defendant argues, Wright had a *per se* conflict of interest that disqualified his entire office from prosecuting the case against defendant.

¶ 44    In response, the State makes several arguments, none of which we find persuasive. First, the State suggests defendant forfeited the argument by not raising it below. However, the State acknowledges that mere silence is not enough to constitute a waiver of a conflict of interest. See *People v. Fife*, 76 Ill. 2d 418, 392 N.E.2d 1345 (1979). Further, the State concedes that "undoubtedly" all parties and the trial court knew of the change in Wright's position, and the record demonstrates that Wright's name and his change in position was noted during the hearing on Young's motion to withdraw. Accordingly, defendant's claim was not forfeited. See *Miller*, 199 Ill. 2d at 545-46 (failure to raise conflict claim in trial court was excused when defendant showed his former counsel and current prosecutor had a *per se* conflict of interest).

¶ 45    Second, the State contends that this case is distinguishable from *Miller* and other cases relied upon by defendant because (1) Wright represented defendant only during postconviction proceedings and not before trial and (2) defendants have only a statutory right to counsel in postconviction proceedings, which is lower than the constitutional right. The State offers no convincing reason why the *per se* conflict rules should be different before and after trial, and courts in this state have not made such a distinction. See *id.* at 546 (*per se* conflict existed when counsel represented the defendant only pretrial and represented the State on a petition to revoke probation filed against the defendant after sentencing); *People v. Curry*, 1 Ill. App. 3d 87, 90-92, 272 N.E.2d 669, 672-73 (1971) (same); *People v. Clucas*, 160 Ill. App. 3d 129, 131, 513 N.E.2d 402, 404 (1987) (*per se* conflict existed when counsel represented the defendant before trial and represented the State at postconviction proceedings). Moreover, the Illinois Supreme Court has been clear that "[t]he right to reasonable assistance of postconviction counsel includes the correlative right to conflict-free representation," and "that counsel must be

- 10 -

as conflict-free as trial counsel." *Hardin*, 217 Ill. 2d at 300.

¶ 46 The bulk of the State's argument focuses on recent Illinois Supreme Court cases clarifying when defense counsel has a *per se* conflict of interest, which presumes prejudice, and when a defendant must prove actual prejudice. The State argues that Wright's becoming the state's attorney after representing defendant in these postconviction proceedings is not a *per se* conflict of interest, and this court should review only whether Wright's representation created an actual conflict.

¶ 47 In the last three years, the Illinois Supreme Court has repeatedly (and emphatically) held that, with respect to defense counsel, "this court recognizes only three situations in which a *per se* conflict of interest will be found to exist." *People v. Green*, 2020 IL 125005, ¶ 43, 178 N.E.3d 1062; see also *People v. Yost*, 2021 IL 126187, ¶ 66, 184 N.E.3d 269. Those three situations are the following:

> " '(1) when defense counsel has a prior or contemporaneous association with the victim, the prosecution, or an entity assisting the prosecution [citations]; (2) when defense counsel contemporaneously represents a prosecution witness [citations]; and (3) when defense counsel was a former prosecutor who had been personally involved in the prosecution of the defendant [citation].' " *In re Br. M.*, 2021 IL 125969, ¶ 45 (quoting *People v. Hernandez*, 231 Ill. 2d 134, 143-44, 896 N.E.2d 297, 303-304 (2008)).

¶ 48 The State points out that none of the three *per se* conflicts established by the supreme court are present in this case and defendant does not make any argument that he was actually prejudiced by Wright's conduct.

¶ 49 The State's argument misapprehends the nature of the conflict at issue. The State

- 11 -

is, of course, correct that this case does not present any of the limited class of circumstances that give rise to a *per se* conflict of defense counsel. But defendant is not arguing that *his attorney* labored under a conflict of interest. Young had no conflict of interest. Instead, defendant contends that the *prosecution* had a *per se* conflict of interest based on the state's attorney's prior representation of defendant in the same case. In other words, we are not concerned with defense counsel's loyalty to defendant but rather that the *current* state's attorney was the defendant's *former* postconviction counsel *in the same case*.

¶ 50        For over a century, the Illinois Supreme Court has recognized that "[a]n attorney cannot be permitted to assist in the prosecution of a criminal case if by reason of his professional relations with the accused he has acquired a knowledge of the facts upon which the prosecution is predicated or which are closely interwoven therewith." *People v. Gerold*, 265 Ill. 448, 478, 107 N.E. 165, 177 (1914). "It is unnecessary that the prosecuting attorney be guilty of an attempt to betray confidence; it is enough if it places him in a position which leaves him open to such charge." *Id.* at 479.

¶ 51        In *People v. Shick*, 318 Ill. App. 3d 899, 906-07, 744 N.E.2d 858, 865 (2001), the Third District wrote the following:

> "Courts across the nation have recognized that a criminal defendant's right to a fair trial is jeopardized when an attorney who has represented him, and who has been in his confidence, terminates the representation to work for the prosecution. [Citation.] In addition to the danger that the defendant will suffer prejudice from the disclosure of confidential information, courts have been concerned that this situation creates an appearance of impropriety damaging to the public's esteem of the legal profession and the criminal justice system. [Citation.]

In Illinois, it has long been held reversible error for an attorney to participate in the prosecution of a former client on charges involving a matter within the scope of the earlier representation. [Citation.] Moreover, such a conflict of interest has been regarded as a *per se* conflict, relieving the defendant of the burden of showing that he suffered actual prejudice."

¶ 52      In *People v. Courtney*, 288 Ill. App. 3d 1025, 1032, 687 N.E.2d 521, 525 (1997), the Third District confronted a factually similar circumstance to the case before us on appeal when the defendant's former counsel became the state's attorney before defendant's trial. Unable to find an Illinois case directly on point, the Third District examined, and ultimately agreed with, three decisions from our sister states addressing similar fact patterns, which all held that a special prosecutor was required when a defendant's trial counsel accepts a managerial position in the office prosecuting that defendant. *Id.* at 1032-34 (agreeing with and adopting the analysis in *State v. Cooper*, 63 Ohio Misc. 1, 7, 409 N.E.2d 1070, 1073 (1980) (stating the "overriding requirement that the public must be able to maintain the right to believe in the total integrity of the Bar as a whole" required county prosecutor's office to be disqualified); *Arizona v. Latigue*, 108 Ariz. 521, 523, 502 P.2d 1340, 1342 (1972); *People v. Shinkle*, 51 N.Y.2d 417, 420-21, 415 N.E.2d 909, 910-11 (1980)).

¶ 53      Under the circumstances presented by this case, we agree with the earlier described case law and conclude that the dismissal of defendant's postconviction petition must be reversed and the case remanded for the appointment of a special prosecutor.

¶ 54      Wright was appointed as defendant's postconviction counsel in 2014 and represented defendant for over a year, withdrawing in July 2015. Wright's motion to withdraw, Rule 651(c) affidavit, and request for fees establish how deeply involved Wright was with

defendant's case as defendant's own attorney. Wright repeatedly communicated with defendant about his claims, reviewed the entire file, communicated with trial counsel, and investigated Lightfoot, who Wright determined was potentially an exculpatory witness. After speaking with Lightfoot on the phone, Wright drafted an affidavit for Lightfoot and attempted to get his signature but was unable to do so. Accordingly, Wright had obtained extensive information from defendant while acting as his attorney.

¶ 55    By 2019, when this court remanded the case for further proceedings, Wright was the state's attorney for Sangamon County, "control[ling] the internal operations of his *** office" and "responsible for the professional conduct and acts of his *** assistants." *Courtney*, 288 Ill. App. 3d at 1034. Although Wright did not personally appear or file anything in the trial court on behalf of the State, he was still directly responsible for the performance of the assistant state's attorneys who did, and he had managerial and supervisory authority over them. See *Shick*, 318 Ill. App. 3d at 907-08. Accordingly, we conclude that (1) Wright had a *per se* conflict of interest that disqualified his entire office and (2) the appropriate remedy is a reversal of the dismissal of defendant's petition.

¶ 56    In reaching this determination, we emphasize the narrowness of our ruling. The Sangamon County State's Attorney's Office is disqualified because Wright (1) was deeply involved with defendant's case and had numerous substantive conversations with him about his case, (2) became the state's attorney in charge of the entire office before the case was remanded for further postconviction proceedings, and (3) represented both the State and defendant in the same postconviction proceedings. If any of these factors were not present, the outcome may well have been different. See, *e.g.*, *People v. Price*, 196 Ill. App. 3d 321, 324, 553 N.E.2d 760, 762 (1990) (distinguishing *Courtney* and finding no conflict where the defendant's former counsel

became an assistant state's attorney, had not had any communication about the case with the office, and was appropriately screened to ensure no communication would occur in the future).

¶ 57 Finally, based on our review of the record, the trial court's decision to grant Young's motion to withdraw was supported and did not appear to be particularly influenced by the comments from the State. Accordingly, on remand, we leave it to the trial court's sound discretion whether to appoint new postconviction counsel or vacate Young's withdrawal.

¶ 58 On remand, the trial court should appoint a special prosecutor and direct that the special prosecutor refrain from communicating with the Sangamon County State's Attorney's Office about the case.

¶ 59                              III. CONCLUSION

¶ 60 For the reasons stated, we reverse the trial court's judgment and remand the case for further second-stage proceedings conducted in accordance with directions provided in this order.

¶ 61 Reversed and remanded with directions.